THE GALENA AND CHICAGO UNION RAILROAD COMPANY, Appellant, *v.* WILLIAM G. RAE, *et al.*, Appellees.

### APPEAL FROM WINNEBAGO.

Railroad companies, as common carriers, must furnish reasonable and ordinary facilities for transportation, such as will meet the ordinary demands of the public; but they are not bound to provide in advance for or anticipate an unusual influx of freight.

An honest and fair effort to aid the public in the prosecution of business, by furnishing such facilities as is best calculated for that purpose, is required of railroad companies; but if they shall, from a pressing cause, take grain from wagons or boats, while grain remained for shipment in private warehouses, acting in good faith, and without partiality or oppression, they will not thereby incur liability.

A railroad company will be liable for fraud or negligence of its servants, in the course of their employment; and if such servants, by reason of bribes or other improper motives, give preference to one person over another, the company may be held liable for damage and injuries thereby sustained.

Such company must use proper diligence in the transportation of freight, or answer in damage, unless it can discharge itself by a proper excuse for the delay. Railroad companies must receive freight according to its usage and custom; and if a company has been used to run cars upon a side track to a private warehouse to receive freight, a readiness to deliver freight at such warehouse would impose on the company the duty to take the freight therefrom.

A tender or readiness to pay freight should be proved in an action against the company for non-transportation or delay in transportation.

A company has a lien for freight charges, and can withhold the delivery until payment.

Pre-payment of freight may be demanded; but, in omitting such demand, a company would be bound to transport freight according to its custom, and slight evidence of a willingness to pay will be sufficient.

If grain was not delivered at its destination in a reasonable time, for any fault of the common carriers, the measure of damages is the difference in the value of the grain at such destination when it was, in fact, delivered, and when it should have been, in the usual course of transportation.

If the company wrongfully refused to carry, the measure of damage is the difference in the price between the two points of shipment and destination, when, if carried, it should have reached its destination, and its value at the place whence it should have been taken, including the necessary expense of storage, deterioration, etc., deducting the reasonable expense of transportation.

The Galena and Chicago Union R. R. Co. *v.* Rae et al.

THE statement of the case, in the opinion of the court, is sufficient to a proper understanding of the questions decided. The proof is too voluminous for publication here, and would not be instructive.

J. LOOP and E. PECK, for Appellant.

J. A. WIGHT, and GLOVER and COOK, for Appellee.

SKINNER, J. This was an action on the *case* against the railroad company, as common carriers, for refusal to carry, and for delay in carrying, the grain of the plaintiff below, from Rockford to Chicago. The cause was tried by jury, who returned a verdict of four thousand nine hundred and fifty dollars against the company, upon which the court rendered judgment, refusing to grant a new trial.

The evidence is very voluminous, and, in the opinion of the court, is insufficient to sustain a verdict for the amount found.

The instructions in the record, and involved in the assignments of error, are seventeen in number, and a critical examination of each, in our opinion, would embrace almost the entire law relating to common carriers. This court is under no obligation to write a treatise upon this branch of the law, nor was the court below bound to act upon instructions not necessary to enlighten the jury of the law arising upon the evidence properly before them.

As the cause will be again for trial, we will state those rules of law in controversy, which are material to the case made by the record.

The evidence shows that the company had the necessary means and facilities for transporting, with dispatch, the amount of freight ordinarily for carriage, and that, at the period when the wrong is charged to have been committed, there was an unusual and extraordinary quantity of grain for shipment, owing to the great harvest of that year, and want of facilities for storage in the country. In this respect the company was not in default, in regard to that duty it owed the public, of affording reasonable facilities for the transportation of freight. Neither the common law nor the statute requires anything more than that the company shall furnish reasonable and ordinary facilities of transportation—such as are adapted to its mode of conveyance, and will meet the ordinary demands of the public. The company was not bound to provide in advance for, or anticipate, extraordinary occasions, or an unusual influx of freight to the road. *Wibert* v. *New York and Erie Railroad Company,* 19 Barbor's S. R. 36; Statutes 1856, p. 1070.

Corporations for carrying are created for the public good, and powers and privileges are given them in consideration of the benefits they are expected to confer upon the public. Their obligations to the public require the use of their facilities fairly, and in such manner as is best calculated, in the prosecution of their business, to afford the largest public benefit. An honest and fair endeavor, in the course of their legitimate enterprise, to accomplish this, is all that can be legally required of them.

If, by reason of the condition of the country, and the peculiar occasion—an unusual quantity of grain on the line for shipment, a want of means in the country of storing it, or other pressing cause—the company took grain from wagons, or from boats from Oregon, while grain remained in private warehouses for shipment, and, in so doing, acted in good faith, intending to afford the largest public accommodation, and not from motives of partiality or oppression, it has not thereby incurred legal liability. If the plaintiff below has, in consequence of an extraordinary occasion, or of the public necessities, and not from the wrong of the company, sustained a loss, he must be content that his loss is suffered for the public good.

The company is liable for the frauds and negligence of its agents and employés, in the course of their employment; and if those in charge of the company's cars, whose duty it was to assign or give them out to be loaded with grain, through bribery, or from motives of partiality or oppression, gave them to persons, by the course and usage of the company, or, in fact, not rightfully entitled to them, and thereby deprived the plaintiff below of the facilities of shipping his grain, he should have had, he is entitled to such damages as he may have sustained therefrom. 1 Salkeld R. 282; 2 ibid. 440; Story on Agency, Secs. 139, 453; Parsons on Cont. 62, 63.

The company was bound to use due diligence in carrying the grain taken to the place of destination; and if, for want of such diligence, the grain taken was not carried and delivered at Chicago, in the usual and reasonable time, the company is liable for the damages thereby sustained; and, if unreasonable delay is shown, the company, to discharge itself, must show a reasonable excuse, arising from accident or other cause, not the consequence of negligence. *Parsons* v. *Hardy*, 14 Wend. R. 216; *Dow and Cary* v. *Cobb*, 12 Barbour's S. C. R. 310; Story on Bailment, Sec. 509.

The company was bound to receive the grain of the plaintiff according to its custom and usage; and if that usage was to run their cars upon a side track to private warehouses, and there receive grain in the cars, a tender accordingly, or notice and readiness so to deliver, would impose obligation on the

company to take and carry the grain. Having adopted this mode, the company could not capriciously require that the grain should be delivered in a different manner, or at a different place. *Merriam* v. *Hartford and New Haven Railroad Company*, 20 Conn. R. 354; *Fulton Insurance Company* v. *Miller*, 23 Ala. R. 420; *Dixon* v. *Dunham*, 14 Ill. R. 324.

It was incumbent on the plaintiff below to prove a tender of the customary price of carrying the grain offered to be shipped, or a readiness and willingness to pay according to the course and usage of the company in such case. The company should have a lien upon the grain carried for reasonable charges, and could withhold the same from delivery until paid. A readiness and willingness to pay the reasonable charges for carrying, according to the usage of the company, would be sufficient to impose the obligation to carry, unless the company required pre-payment, and then the plaintiff would be required to offer and be ready to pay accordingly. Slight evidence, however, of readiness and willingness to pay would be sufficient, and they may be presumed or inferred from surrounding circumstances tending to raise such presumption. Story on Bailments, Sec. 508; Angel and Ames on Carriers, Sec. 124; Parsons on Cont. 548; *Hough* v. *Rawson*, 17 Ill. R. 588.

The measure of damages in this case we regard as settled by the case of *The Sangamon and Morgan Railroad Company* v. *Henry*, 14 Ill. R. 156. If the grain shipped was not delivered in Chicago in reasonable time, for any fault of the company, the measure of damages is the difference in the value of the grain, at Chicago, when it was, in fact, delivered, and when it should have been, in the usual course of transportation, delivered there. If the company wrongfully refused to carry the grain, the measure of damages is the difference between the value at Chicago when, if carried, it should have reached there, and its value, at such time, at the place whence it should have been taken, including the necessary expense of storage and deterioration, and the like, accruing by reason of its detention, and deducting the reasonable expense of transportation. *Green* v. *Stadden*, 11 Ill. R. 613.

There is no proof in the case that the grain was lost or damaged by being detained at Rockford, and the jury, probably, based their verdict upon the hypothesis that the company was bound to be ready, at all events, to carry whatever amount of freight was for transportation, and when required.

Judgment reversed and cause remanded.

*Judgment reversed.*