# Charleston.

BALTIMORE AND OHIO RAILROAD COMPANY *vs.* JAMES L. MORE-
HEAD.

January Term, 1872.

1. After issue joined, the defendant tenders a demurrer to the declaration, which is objected to because it comes too late, and the objection is sustained; and it is held that the refusal is equivalent to overruling the demurrer after it is filed. For if the declaration is sufficient to enable the court to proceed to judgment according to law and the very right of the case, the demurrer should be overruled, and as in such a case the defendant's rights could not be prejudiced by the overruling the demurrer, he is not injured by the refusal, as he has the same remedy in either case.

2. The allegation that "the defendant, before and at the time of the committing of the grievances hereinafter mentioned, were the owners and proprietors of a certain railroad, to-wit, the Baltimore and Ohio railroad, and of certain carriages used by it for the carriage and conveyance of goods and chattels in, upon, and along said railway from a certain place, to-wit, Parkersburg, Wood county, West Virginia, for hire and reward to it the defendant in that behalf," is a sufficient allegation that the defendant was a common carrier.

3. A common carrier is liable for all losses that he could have prevented by skill and foresight; and the *onus* is on him to show that the loss was such as he could not have prevented.

4. If the defendant, the common carrier, could not deliver the goods at the point of destination; could not have access to the consignee in consequence of the war, it was its duty, nevertheless, to have taken care of the goods for the consignor, and not to have converted them to its own use.

5. Upon reaching the point of destination, it is the duty of the carrier to tender delivery, or at least notify the consignee of his readiness to deliver; and if the place of destination cannot be reached so as to make the delivery, the carrier should not only take care of the goods, but also notify the consignor or owner within a reasonable time, of his inability to make the delivery, and thereafter he will be liable only as a bailee.

6. The common carrier's undertaking to transport the goods, necessarily includes the duty of delivering them in safety, and within a reasonable time, and he is liable for all loss or damage except that which is caused by the act of God, or the public enemy; and even then he is responsible if the inevitable accident is the remote, and not the immediate, cause of the loss, and the loss could have been avoided by prudence and proper care.

Action of trespass on the case in the circuit court of Wood county; declaration filed March rules, 1868. Verdict for

294  COURT OF APPEALS OF WEST VIRGINIA.

Jan'y Term,     Baltimore & Ohio R. R. Co. vs. Morehead.     1872

plaintiff, subject to the opinion of court on a demurrer to evidence filed by the defendant, and judgment on the verdict May term, 1870.

There were some questions made in this court, upon the pleadings and a demurrer to the declaration, which will be found sufficiently stated in the opinion of judge Moore.

The evidence in the case upon which the demurrer was taken is as follows:

"T. Lomasney testified that on the 18th day of April, 1861, he was receiving and forwarding clerk of the B. & O. R. R. Co., on the platform of the railroad depot in Parkersburg, and that it was his duty to ship freight for the east, Baltimore, Richmond, &c.; that he had signed a certain bill of lading for and on behalf of the B. & O. R. R. Co., exhibited to him by the plaintiff, for the transportation of three barrels of whisky, to be carried to John H. Rixey, Culpepper C. H., Va.; that said three barrels of whisky were loaded in the cars for carriage; that said witness also testified that the destination of the said whisky was to the agent of the Alexandria and Orange Railroad Company, at Alexandria, Va.; other whisky had been shipped by plaintiff over said road through said Lomasney to Richmond, prior to the date of the shipment in controversy; that the witness could not recollect now what marks there were on the barrels last shipped, but the same were marked.

"James L. Morehead, the plaintiff, testified that he was present when the whisky was put on the cars, and it was moved away in less than a half-hour from the time it was taken to the depot; he resided at that time in Parkersburg, and heard nothing more of the whisky until the close of the war in 1865. He also proved that he was doing business as a merchant in the "Spencer block," immediately opposite the railroad station of said company in Parkersburg, and was shipping goods nearly every day. He also proved that Alexandria is in the State of Virginia, and within nine miles of the city of Washington. He also proved that the whisky shipped was a year older than that which he had previously shipped to the same party, and for which he had received one dollar and twenty-five cents per gallon, and was worth one dollar and fifty cents per gallon; that the said whisky was shipped, marked to J.

H. Rixey, Culpepper Court House, care of agent of Alexandria and Orange Railroad Company at Alexandria; that sometime in 1865 he learned from Rixey that he had not received the whisky; then he made inquiry for it, and learned that some time in 1866, that it had been sold in Baltimore by the railroad some time in 1864, but does not recollect what it sold for; that in Baltimore, after this suit was brought, and whilst defendant was taking depositions, it was stated that a small sum, some thirty odd dollars, the surplus proceeds of sale, would be paid him if he would receive it, but that he laughed at the idea; that he received no information from the railroad company that said whisky had been stored in Baltimore, and there kept, at any time, till he received the information as above stated, and that he made no inquiry for the said whisky from the time he shipped it until he came to learn from Rixey, in 1865, that it had never been received, he supposing that said whisky had been delivered to said Rixey. He also proved that he sent the said whisky to Rixey on consignment, at Culpepper C. H., and that he was to pay all freights upon the same, in addition to the one dollar and fifty cents per gallon for the same; that he had a conversation with one E. P. Holden, clerk of errors in the office of the defendant at Baltimore, about the loss of the whisky; that afterwards the clerk aforesaid wrote him, the plaintiff, a letter, which letter was produced, and is in the following words and figures, to-wit:

BALTIMORE AND OHIO RAILROAD COMPANY,
OFFICE OF CLERK OF ERRORS,
BALTIMORE, August 23, 1866

*James L. Morehead, Esq.:*

DEAR SIR: Will you please *furnish me the cost price of the whisky* shipped by you in 1861? It is necessary that I should have all the points before making a report. Please note that it is the cost price at Parkersburg at time of shipment that I require.   Respectfully,

E. P. HOLDEN,

Clerk of Errors.

" That afterward the plaintiff heard that the investigation for the whisky resulted without success, until the time before stated; that the whisky was worth, at Parkersburg, at the

time he shipped it, one dollar and fifty cents per gallon; that he had sent it to John H. Rixey, of Culpepper C. H., Va., to be sold for one dollar and fifty cents per gallon, payment to be made when liquor was sold; that he had sold some of the same whisky the year previous to said Rixey for one dollar and twenty-five cents per gallon; that the three barrels contained one hundred and twenty-nine gallons of whisky; that no freight was paid for the carriage of said three (3) barrels of whisky.

"The defendant, to maintain the issue on its part, offered the following evidence:

"That the war between the rebels and federal government had begun prior to the date of the alleged shipment of whisky; that troops were marching through Baltimore to Washington previous to that time; that fort Sumter had been fired upon on the 12th or 13th of April, 1861; that the President of the United States had issued his call for 75,000 men on the 15th day of April, 1861. The defendant gave in evidence the depositions of E. P. Holden, James M. Vansant, and Edward L. Thomas, which are as follows:

"Interrogatories on the part of the defendants, to be propounded to Enoch P. Holden, James M. Vansant and Edward L. Thomas, witnesses to be examined on the part of the defendant in the above case:

"First interrogatory. What is your name, age, and present occupation?

"Second interrogatory. Do you know anything in relation to three barrels of whisky marked "John H. Rixey" that were at any time in the possession of the defendant; and if so, state what you know.

"Cross-interrogatories on the part of the plaintiff, to be proposed to Enoch P. Holden and Edward L. Thomas, witnesses to be examined on the part of the defendant in the above case:

"First cross-interrogatory. Do you know of any notice having been given to the plaintiff in this case of this whisky not having been sent to its place of destination, or of its having been sold?

"Depositions of witnesses taken this 6th day of June, 1868, at the office of J. H. B. Latrobe, Esquire, attorney-at-law, on St. Paul street, near Lexington street, in the city of Baltimore

and State of Maryland, between the hours of nine A. M. and six P. M., pursuant to the annexed notice and commission, to be read in evidence on behalf of the defendants in a certain suit now pending in the circuit court of Wood county, in the State of West Virginia, wherein James L. Morehead is plaintiff and the Baltimore and Ohio Railroad Company are defendants.

"Enoch P. Holden, a witness of lawful age, produced on behalf of the defendant, being first duly sworn, deposes and says as follows:

"To the first interrogatory he answereth and saith: My name is Enoch P. Holden; age, sixty-two years, and employed at present as clerk in the general freight office of the Baltimore and Ohio Railroad Company.

"To the second interrogatory he answereth and saith: I delivered to Messrs. Adreon & Company, auctioneers, with a large amount of other merchandise, three barrels of whisky marked "John H. Rixey, Culpepper C. H., Virginia," to be sold by them on account of whom it may concern, returns to be made to the Baltimore and Ohio Railroad Company, and it was sold; I think this was in the year 1862 or 1863, but am not positive about the date; I do not know who the whisky came from or who it belonged to.

"Whereupon the plaintiff exhibited his cross-interrogatories to be put to said witness, which are herewith returned, and the said witness being examined thereon, deposes and says:

"To the first cross-interrogatory he answereth and saith: I do not.

"James M. Vansant, a witness of lawful age, produced on behalf of the defendant, being first duly sworn, deposeth and saith as follows:

"To the first interrogatory he saith: My name is James M. Vansant; age, twenty-eight years; occupation, delivery clerk of the Baltimore and Ohio Railroad Company.

"To the second interrogatory: I have no recollection of anything about this whisky; there is a reference to it on the records kept in the office of the company, but I did not make the record.

38

298 COURT OF APPEALS OF WEST VIRGINIA.

Jan'y Term,    Baltimore & Ohio R. R. Co. vs. Morehead.    1872

"Edward L. Thomas, a witness of lawful age, produced on the part of the defendant, being first duly sworn, deposeth and saith:

"To the first interrogatory he saith : My name is Edward L. Thomas; age, forty-seven, and present employment, auctioneer.

"To the second interrogatory he saith: I recollect selling three barrels whisky marked John H. Rixey, Culpepper C. H., Va., on account of the Baltimore and Ohio Railroad Company; this was, I think, in the year 1864, but of this date I am uncertain; it was sold for thirty-eight dollars and some cents, to the best of my recollection, which amount I paid over to the Railroad Company, less commissions.

"Whereupon the plaintiff exhibited his cross-interrogatories to be put the said witness, which are hereby returned. And the said witness being examined thereon, deposeth and saith:

"To the first cross-interrogatory he deposeth and saith: I do not."

The defendant brought the case here for review.

*Lee* for the plaintiff in error.
*Amiss & Son* for defendant in error.

MOORE, J. In the case under consideration, the defendant came into court, at the first term after judgment entered at rules, and demurred generally to the plaintiff's declaration, in which the plaintiff joined, and at the same time defendant pleaded not guilty and put itself upon the country, and the plaintiff did likewise; whereupon the office judgment and writ of enquiry were set aside. The record shows this to have taken place April 18th, 1868. On the 20th day of April, 1868, "came again the parties by their attorneys, and there being no cause of demurrer assigned by the defendant to the plaintiff's declaration, the said demurrer was overruled, and thereupon the defendant pleaded non-assumpsit and put itself upon the country, and the plaintiff did likewise, and the trial of the issue was continued. On the 28th of April, 1870, the parties came by their attorneys, and the defendant, by its attorney, tendered a demurrer to each count of the plaintiff's declaration; the plaintiff objected to the filing of said demur-

rer because tendered too late; the court sustained the objection and refused to receive the said demurrer or allow the same to be filed, and thereupon came a jury," &c.

It seems to me the refusal of the court to permit the defendant to file said demurrer is equivalent to overruling the demurrer after it is filed. If the declaration is sufficient to enable the court to proceed to judgment according to law and the very right of the cause, the demurrer should be overruled; and as in such a case the defendant's rights could not be prejudiced by the overruling the demurrer, I cannot see that he is injured by the court refusing to permit the filing of the demurrer. He has the same remedy in either case, if the court errs.

But in the case under consideration, the count complained of is sufficient in law, the language, "the defendant, before and at the time of the committing of the grievances hereinafter mentioned, were the owners and proprietors of a certain railroad, to-wit, the Baltimore and Ohio railroad, and of certain carriages used by it for the carriage and conveyance of goods and chattels in, upon, and along said railway from a certain place, to-wit, Parkersburg, Wood county, West Virginia, for hire and reward to it the defendant, in that behalf," is a sufficient allegation that defendant was a common carrier; because it is the very definition of a common carrier. I think the principle is the same as laid down by this court in the case of *Rauch* vs. *Rathbone Oil Tract Co., infra,* and cases therein cited, and *Express Company* vs. *Kountze Brothers,* 8 Wallace, 342, &c.; and *Jones et al.* vs. *Pitcher & Co.,* 3 Stew. & Port., 135 and 171. The court, therefore, would not have erred by overruling the demurrer, and consequently has not err ed in refusing to file it.

As to the demurrer to evidence. The evidence, as set forth in the demurrer, shows that the plaintiff was entitled to recover; the judgment was therefore properly entered for him. *Boyd's Adm'r* vs. *City Savings Bank,* 15 Gratt., 503. A carrier is liable for all losses that he could have prevented by skill and foresight; and the *onus* is on him to show that the loss was such as he could not have prevented. *Turney* vs. *Wilson,* 7 Yerg., 340. If the defendant could not deliver the goods at the point of destination, could not have access to the

consignee in consequence of the war, it was his duty, nevertheless, to have taken care of the goods for the consignor, and not to have converted them to its own use.   Upon reaching the point of destination it is the duty of the carrier to tender delivery, or at least notify the consignee of his readiness to deliver.   *Chickering* vs. *Fowler*, 4 Pickering, 371 ;  *Ostrander* vs. *Brown*, 15 Johns., 39 ;  *Clendaniel* vs. *Tuckerman*, 17 Barbour, 184 ;  *Price* vs. *Powell*, 3 N. Y., 322 ;  *Gibson* vs. *Culver*, 17 Wend., 311 ; and it seems to me if the place of destination cannot be reached so as to make the delivery, the carrier should not only take care of the goods, but also notify the consignor or owner, within a reasonable time, of his inability to make the delivery, and thereafter he would be liable only as a bailee.   *Clendaniel* vs. *Tuckerman*, 17 Barb., 184 ; 2 Kent's Comm., 605.   The carrier's undertaking to transport the goods, necessarily includes the duty of delivering them in safety, *DeMott* vs. *Laraway*, 14 Wend., 225, cited in Abbott's N. Y. Dig., p. 518, § 68 ; and within a reasonable time, *Conger* vs. *Hudson River R. R. Co.*, 6 Duer, 375 ; and he is liable for all loss or damage, except that which is caused by the act of God, or the public enemy, *Elliott* vs. *Rossell*, 10 Johns., 1 ; and even then he is responsible if the inevitable accident is the remote, and not the immediate, cause of the loss, and the loss could have been avoided by prudence and proper care, *Sprowl et al.* vs. *Kellar*, 4 Stew. & Port., 382 ; *Railroad Co.* vs. *Reeves*, 10. Wallace, 176 ; *Express Co.* vs. *Kountze Bro.*, 8 Wallace, 352, &c.

In the case before us, the defendant's evidence only shows that the war was existing, but it does not show that the defendant was prevented thereby from delivering the whisky. The whisky was sold at the instance of the defendant, and was not lost by inevitable accident ; it was, in fact, not lost at all, but taken by the defendant and converted to its own use without the consent of the owner.

I do not think there is sufficient error to justify this court in reversing the judgment.   It should be affirmed, with costs and damages.

The other judges concurred.

JUDGMENT AFFIRMED.