THE PEOPLE OF THE STATE OF NEW YORK *ex rel.* HENRY C. OHLEN, APPELLANT, *v.* THE NEW YORK, LAKE ERIE & WESTERN RAILROAD COMPANY AND OTHERS, RESPONDENT.

*Common carrier—the remedy of a person, aggrieved by its refusal to transport freight, is by an action at law, and not by.mandamus—measure of damages in such an action.*

Where a railroad company wrongfully refuses to receive and transport goods, tendered to it by one who offers to comply with the terms established by it in reference thereto, the remedy of the party aggrieved is by an action at law, to recover the damages sustained thereby, and as the remedy afforded to him by such action is an appropriate and adequate one, a *mandamus* compelling the company to receive and transport such goods will not be granted.

In an action at law against a common carrier for a wrongful refusal to receive and transport property, the party aggrieved is entitled to recover, as damages, the difference between the value of the property at the place where it was tendered to the company, and its value at the place to which it was to be taken, less the expenses of transportation.

APPEAL from an order quashing a writ of alternative mandamus, issued to require the defendant to receive and carry crude oil for the relator, on its tank cars.

A writ of alternative mandamus was issued on the application of the relator, Ohlen. A motion to quash was made at Special Term, and granted. The relator in his application says, in substance, that he had crude petroleum oil at a place called Carrollton, for which he desired transportion to a place called Weehawken Docks; that the railroad company had the means of transporting it, and that the transportation of such oil, between the points specified, was a part

534· PEOPLE *ex rel.* OHLEN *v.* N. Y., L. E. & W. R. R. CO.

FIRST DEPARTMENT, NOVEMBER TERM, 1880.

of its business; that the relator requested the railroad company to transport the oil, and the company declined.

*S. Jones,* for the appellant. The duty to transport relator's goods is imposed by statute on the respondent. (Laws of 1850, ch. 140, § 36, p. 232; *State* v. *Hartford & New Haven R. R. Co.,* 29 Conn., 547; *Vincent* v. *C. & A. R. R. Co.,* 49 Ill., 40; *Chicago & Northwestern R. R. Co.* v. *People,* 56 Ill., 365; *People* v. *Albany & Vermont R. R. Co.,* 24 N. Y., 261–269.) The remedy for neglect or refusal to perform a duty imposed by statute on a corporation, is by mandamus to compel its performance. (*Blakemon* v. *Glamorganiston Canal Co.,* 1 Mylne & K., 154, 162–168, per Lord ELDON; *Queen* v. *Eastern Counties R. R.,* 2 Perry & D., 648, 655, 656; per DENMAN, Ch. J.; *Reg.* v. *Trustees Luton Roads,* 1 Q. B., 860; *Reg.* v. *Bristol Railway Co.,* 2 Q. B. 64; *Reg.* v. *Bury Roads,* 6 D. & R., 368; *King* v. *Justices of Cumberland,* 1 Maule & S., 190, 196; *Rex* v. *Severn & Wye R. R. Co.,* 2 B. & A., 646; *Rex* v. *York & North Midland R. R.,* 16 Eng. L. & E., 299; *State* v. *Hartford & New Haven R. R.,* 29 Conn., 547; *Chicago & Northwestern R. R. Co.* v. *People,* 56 Ill., 365; *People* v. *Albany & Vermont R. R.,* 24 N. Y., 261–267; *McCullough* v. *Mayor of Brooklyn,* 23 Wend., 458; *People* v. *Mead,* 24 N. Y., 120; *People* v. *Supervisors Chenango Co.,* 1 Kern., 574; *People* v. *Hawes,* 47 Barb., 457.) The other remedy to bar this writ, must be a legal, specific and adequate remedy, and equally as convenient and efficacious. (Tapping on Mandamus, 18, 19; High on Extraordinary Remedies, § 17; *Overseers* v. *Overseers,* 82 Pa. St., 279; *Fish* v. *Weatherwax,* 2 Johns. Cas., 217; *People* v. *Mayor,* 10 Wend., 395; *Exp. Lynch,* 2 Hill, 45; *People* ex rel. *Ryan* v. *Green,* 58 N. Y., 295; *People* v. *Hawkins,* 46 Id., 11; *People* v. *Green,* 1 Hun, 1.) An action on the case against a corporation to compel it to perform a statutory duty is not such a remedy by action as will prevent the allowance of a mandamus. (*McCullough* v. *Mayor,* 23 Wend., 461; *People* v. *Meade,* 24 N. Y., 120; *People* v. *Hawkins,* 46 Id., 11; *People* v. *Green,* 58 Id., 305, 306; *Chicago & N. W. R. R. Co.* v. *People,* 56 Ill., 365; *Queen* v. *Bristol Dock Co.,* 4 Q. B., 70; *Queen* v. *Eastern Counties R. R. Co.,* 10 Adolph. & Ellis, 565.)

*W. D. Shipman* and *W. W. Macfarland,* for the respondent. A writ of mandamus cannot issue to a common carrier to compel the carrier to perform an alleged common law duty. (*People* ex rel. *Walker* v. *Babcock,* 16 Hun, 313.) Nor will the writ of mandamus issue in any case where there is an adequate remedy by action. (Tapping on Mandamus, 3; *People* v. *Green,* 1 Hun, 1; *Commonwealth* v. *Rossiter,* 2 Binney, 360; *Overseers* v. *Overseers,* 82 Pa. St., 279; *Exp. Lynch,* 2 Hill, 45; *Exp. Firemen's Ins. Co.,* 6 Id., 243; *People* v. *Mayor, &c.,* 10 Wend., 395; *People* v. *Green,* 58 N. Y., 306; *N. J. Steam Nav. Co.* v. *Merchants' Bank,* 6 How. U. S., 382; Angell on Carriers, ch. 5, § 123, *et seq.;* 2 Kent's Comm., 599; Laws of 1850, ch. 140, § 36.)

DANIELS, J.:

It was shown by the statements in the writ that the defendant was a corporation formed in 1878, under and in pursuance of chapter 430 of the Laws of 1874. That chapter, as it was amended by chapter 446 of the Laws of 1876, which was enacted before, and was in force when the corporation was formed, provided for the formation of railroad companies, upon the sale, under a judgment or decree of a court of competent jurisdiction, of the railroad property, privileges and franchises of any other railroad corporation. (Laws 1876, ch. 480, § 1.) It is to be inferred, from the statement made in the writ, that the same railroad property, franchises and privileges acquired by the defendant, were, before its formation, vested in another corporation, and from the points presented in favor of the relator, that such other railroad company was that known as the New York & Erie Railroad, or Erie Railway Company. But, even if that were the case, no different disposition of this appeal would probably be required to be made because of that circumstance. It is not claimed that any distinction should, on that account, be made, and the propriety of none has been perceived, for the reason that in the carriage and transportation of persons and property, the duties and obligations of all railroad companies are, under the laws of the State, substantially the same. A company formed as the defendant was, has in terms been vested with and becomes entitled to enjoy all the rights, privileges and franchises

which, at the time of the sale under the judgment or decree, belonged to, or were vested in the corporation which last.owned,the property sold, or of its receiver. And it was made subject to all the duties and liabilities imposed by the act authorizing the formation of railroad corporations, enacted in 1850 (ch. 140), and the acts amendatory thereof, except where they may be inconsistent with the laws of 1874 and 1876, or with the rights, privileges, or franchises of the corporation whose property and franchises were made the subject of the sale. (Laws 1876, 481, ch. 446, § 1, subd. 4.) The act of 1850 provided that, " Every such corporation shall start and run their cars. for the transportation of passengers and property, at regular times, to be fixed by public notice; and shall furnish sufficient accommodations for the transportation of all such passengers and property as shall, within a reasonable time previous thereto, be offered for transportation at the place of starting, and the junctions of other railroads, and at usual stopping-places established for receiving and discharging way passengers and freights for that train ; and shall take, transport and discharge such passengers and property at, from and to such places, on the due payment of the freight or fare legally authorized therefor ; and shall be liable to the party aggrieved, in an action for damages, for any neglect or refusal in the premises." (Laws 1850, ch. 140, § 36.) In terms, this included only the railroad corporations formed under its own provisions. But by section 49 of the same act, this section was rendered applicable to all existing railroad corporations, so far as it was not inconsistent with the charter of such corporations. (Id., 235, § 49.) And no such inconsistency appears between the duties and obligations imposed by this section, and the provision contained in the charter of the New York & Erie Railroad Company, by which it was empowered to regulate the time and manner in which goods and passengers should be transported, taken and carried on its railroad. (Laws 1832, ch. 224, § 1.) For that included no such power of discrimination, as it was the design of section.36 of the act of 1850 to prevent. Under these acts, it was the duty of the defendant to furnish sufficient accommodation for the transportation of all such property as should, within a reasonable time previous thereto, be offered for transportation, at the place of starting, or at the junction.

PEOPLE *ex rel.* OHLEN *v.* N. Y., L. E. & W. R. R. CO.  537.

FIRST DEPARTMENT, NOVEMBER TERM, 1880.

of other railroads, or at usual stopping-places established for receiving and discharging freight for the trains, and to take, transport and discharge property at, from and to such places, on the payment of the freight legally authorized therefor. (Laws 1850, ch. 140, § 36.)

And that was no more than what the common law had prescribed on the same subject for many years before railroads were either used or known. This business was then carried on by a different class of vehicles on the land. The persons who were engaged in it were known as common carriers of property for hire. And they were legally obligated to carry all such property as should be offered within a reasonable time previous to the commencement of the trip, and for which a fair and proper compensation might be offered or paid. If they refused to receive and carry property so offered, without any justifiable reason for doing so, they became liable to the party injured by the refusal. (*New Jersey Steam Navigation Co.* v. *Merchants' Bank*, 6 How. U. S., 344, 382–3; Angell on Carriers, 5 ed., §§ 124, 418.) In a case decided many years since it was held that a common carrier was liable by law to carry everything which was brought to him, for a reasonable sum to be paid for the carriage, and not to extort what he will. (*Harris* v. *Packwood*, 3 Taunt., 264, 272.) His prices must be reasonable. (Id., 271.) And since the construction of railways and the transaction of this business by the companies owning or operating them, they have been held to be common carriers of property for hire, and for that reason the same principles have been applied to the conduct of their business. (*Crouch* v. *Great Northern Railway*, 34 Eng. Law & Eq., 573; *Thomas* v. *Boston, &c., R. R.*, 10 Met., 472.)

Whether the obligations resting upon the defendant are to be derived from the common law, or the statute, they are substantially the same. In either case it was obliged to provide reasonable vehicles for the carriage and transportation of the property offered to it for that purpose, and to carry it for a reasonable compensation. It could not unreasonably or unjustly discriminate between persons whose property was offered for transportation, but it was bound to deal with them substantially alike. The law requires equal justice to all. (*Fitchburg R. R. Co.* v. *Gage*, 12 Gray, 393.) This equal-

ity, it was held in that case, consisted " in the restricted right to charge in each particular case of service a reasonable compensation, and no more. If the carrier confines himself to this, no wrong can be done, and no cause afforded for complaint. If, for special reasons in isolated cases, the carrier sees fit to stipulate for the carriage of goods or merchandise of any class for individuals for a certain time, or in certain quantities, for less compensation than what is the usual, necessary and reasonable rate, he may undoubtedly do so without thereby entitling all other persons and parties to the same advantage and relief."

These principles of the statute, and of the common law, are relied upon by the relator in support of his right to the writ which the order, from which the appeal has been taken, has dismissed. It is alleged by him that they have been disregarded by the defendant to his injury, and that it should be required specifically to perform the obligations existing in his favor as the owner of property presented for transportation over its railroad. This property consists of a large quantity of crude oil. How much, has not been made to appear. But on June 1, 1878, and from thence to the issuing of the writ, he had this property and desired to have it carried and transported over the defendant's road. The property was offered to its officers and agents for that purpose, and it declined to receive or transport it, although it had the necessary tank cars unemployed by which that could have been done. And they were detained unemployed until they were devoted to the transportation of the same nature of property, afterwards offered by other parties, for a less rate of compensation than the established rate offered by the relator. These facts are not controverted, and they must therefore be accepted as the truth. And considering them as established in the case, as they must be, the defendant has violated its obligations and duties to the relator. He had the legal right to have his property carried as long as the defendant had the unemployed vehicles by which it could have been transported, and ' he was ready to pay the ordinary compensation for the service. This legal obligation existed in his favor, and, by the circumstances appearing, it was violated by the defendant's refusal to receive and carry his property. What has been said upon this subject in another case is especially apposite

to the one now before the court. And that is, that "if those in charge of the company's cars, whose duty it was to assign, or give them out to be loaded with grain, through trickery or from motives of partiality or oppression, gave them to persons by the course and usage of the company, or, in fact, not rightfully entitled to them, and thereby deprived the plaintiff below of the facilities of shipping his grain he should have had, he is entitled to such damages as he may have sustained therefor." (*Galena & Chicago R. R. Co. v. Rae,* 18 Ill., 488, 490.) And the same considerations have been applied to the recovery of excessive charges beyond those reasonably required to be paid. (*Crouch v. Northern Railway, supra.*) In that case it was said by Martin, B., that if the defendants designedly refused to carry parcels which they were bound by law to take, for the purpose of getting a monopoly in their hands and destroying the plaintiff's trade, under such circumstances I am not prepared to say that a jury might not give very heavy damages. (Id., 588.) The purpose of the law is to secure a reasonable degree of equity in the business of railways, and to require them to afford the use of their facilities for the transportation of property to all who may have occasion for their employment, and without any unjust or unreasonable discrimination as to the terms of compensation. Where that is denied or refused, an action for damages has been prescribed as the remedy. In that action complete redress can be obtained, for the law has fixed the measure of compensation to be the difference, less the expenses of transportation, between the value of the property at the place where it may be offered and that to which it was intended to be taken. (*Galena & Chicago R. R. Co. v. Rae,* 18 Ill., 491.) That will fully compensate the owner for the loss sustained by him because of the unlawful refusal to carry his property. And it has also been prescribed by the statute as sufficient to redress the injury sustained : for that has rendered the company liable to the party aggrieved, in an action for damages, for any neglect or refusal in the performance of the duty enjoined. (Laws of 1850, ch. 140, § 36.) Where the rights and obligations relied upon by the relator concededly exist, and they are violated as they appear to have been in this case, this action for damages has at all times been considered to be the appropriate remedy. It is com-

plete and adequate for that purpose. And where that is the case,. the law has confined the party to that remedy. An exception exists where a public officer refuses to discharge his duties, and where a corporation suspends the exercise of its franchises. (*McCullough* v. *Mayor, &c.*, 23 Wend., 458; *People* ex rel. *Fiedler* v. *Mead*, 24 N. Y., 114, 120; *People* ex rel. *Ryan* v. *Green*, 58 N. Y., 295, 305, 306.) But neither exception includes the present case, for the defendant has in no way suspended the operation of its franchises, but what it has done has. been a refusal to employ them in the service of the relator. That. is a private injury capable of being fully compensated by an action for damages, and for that reason does not depend upon the writ of mandamus. The case of *Chicago & Northwestern R. R. Co.* v. *People* (56 Ill., 365), does not extend far enough to justify the present application of this remedy, although it seems to have gone beyond what has usually been considered as the settled law on this subject. The authorities existing against the plaintiff's application for this writ are clear and explicit. The rule which they sustain is that "where there is a plain and adequate remedy by action for the party aggrieved, the writ of mandamus does not lie." (Exp. *Lynch,* 2 Hill, 45; Exp. *Fireman's Ins. Co.*, 6 Id., 243; *People* v. *Green,* 1 Hun, 1; *Commonwealth* v. *Rossiter*, 2 Binney, 360; *Overseers* v. *Overseers*, 82 Penn., 275; *People* ex rel. *Walker* v. *Babcock*, 16 Hun, 313.) The object of this writ is to enforce and protect legal rights existing without any other appropriate or adequate remedy. It is resorted to for the purpose of preventing a failure of justice, and not as a substitute for a well-defined legal action. For that reason alone, while the relator had a clear right to have his property carried on the terms with which he offered compliance, and has been injured by the refusal of the defendant and its officers to receive and transport it, this appeal cannot be sustained. His remedy is by an action to recover damages, and not by the intervention of the writ of mandamus.

The order made should be affirmed.

DAVIS, P. J., and BARRETT, J., concurred.

Order affirmed.