LIND NELSON, APPELLEE, V. CHICAGO, BURLINGTON & QUINCY RAILWAY COMPANY, APPELLANT.

FILED JANUARY 5, 1907. No. 14,595.

1. **Carriers: SHIPMENT OF CATTLE.** When cattle have been delivered to and accepted by a railroad company in its loading pens for immediate shipment, the company is liable as a common carrier for damages to the cattle from the time of such delivery. *Chicago, B. & Q. R. Co. v. Powers,* 73 Neb. Neb. 816, examined and distinguished.

2. ———: DELAYED SHIPMENTS. A railroad company is not an insurer of the arrival of its trains on schedule time in the transportation

of live stock, but, where there is a material delay in the delivery of the stock, the company must, to exonerate itself from liability, show that the delay arose from some cause other than its own negligence.

3. ———: ———. Under the constitution and statutes of this state, the liability of a railroad company for unnecessary and unreasonaole delay in the shipment of live stock is the same whether the contract of shipment is a written or an oral cne.

4. **Instructions: REVIEW.** Action of the trial court in giving and refusing instructions examined, and *held* not prejudicial.

APPEAL from the district court for Franklin county: ED L. ADAMS, JUDGE. *Affirmed.*

*J. W. Deweese, F. E. Bishop, W. S. Morlan* and *Dorsey & McGrew,* for appellant.

*George W. Prather* and *G. M. Caster, contra.*

OLDHAM, C.

This was an action to recover damages for an alleged delay in the shipment of nine car-loads of fat cattle from Franklin, Nebraska, to St. Joseph, Missouri, on the 4th day of January, 1904. Defendant answered plaintiff's petition with a general denial. On issues thus joined there was a trial to the court and jury, verdict and judgment for the plaintiff. To reverse this judgment defendant has appealed to this court.

There is very little dispute as to any material fact involved in the controversy, the evidence tending to show that on the last day of December, 1903, plaintiff, who had been engaged in shipping live stock for a number of years over defendant's line of railroad, arranged with one of defendant's agents in St. Joseph for nine cattle cars to be delivered for his use at Franklin, Nebraska, on Saturday, January 3, 1904. It was the understanding that plaintiff would bed the cars on Saturday, and have them loaded with cattle on Sunday morning, for transportation on the regular train, known as train No. 64, which was

scheduled to leave Franklin at 9:15 o'clock A. M.   It appears that the plaintiff went to Franklin on Saturday for the purpose of bedding his cars, but was informed by defendant's agent that, through some mistake at Red Cloud, the cars had been carried west of Franklin on train No. 63, but would be returned to Franklin on train No. 64 on Sunday morning.  Plaintiff drove his cattle to the depot at Franklin at about 8 o'clock on Sunday morning and put them into the yards for shipment, then notified defendant's agent of this fact.   The agent told him that was all right, but that the train was probably an hour late.   Instead of being but an hour late, the train did not arrive until after 3 o'clock P. M., when it was loaded with cattle and left the station about 4 o'clock, and arrived at St. Joseph between 11 and 12 o'clock M. on Monday, being about nine hours behind its schedule time.   There is no evidence introduced by the defendant tending to explain this delay, which appears to have been largely due to its failure to arrive at Franklin on schedule time.

The first contention urged by the appellant is that the company owed no duty to the defendant with reference to the cattle shipped until they were actually loaded on its cars and a contract or bill of lading was made out and signed.  In the recent case of *Chicago, B. & Q. R. Co. v. Powers,* 73 Neb. 816, which is relied on as supporting this contention, the facts were that the cattle were put in the stock pens, not for the purpose of immediate shipment, but rather for the convenience of the owner in herding them, and with the intention of taking the stock from the pens on the following morning for the purpose of grazing and feeding them before the shipment was to begin. Under this state of facts we held that the company had not received the stock for immediate shipment, and that the liability of the company in such a case was but that of an ordinary depositary, or bailee.  But in the opinion we took occasion to say: "We think the rule well established that, when a shipper surrenders the entire custody of his goods to a common carrier for immediate transportation,

and the carrier so accepts them, the liability of the carrier * * * at once attaches." In the case at bar, the cattle were delivered in the pens at or about the time that the shipment should have been made. Defendant's station agent was informed of this fact, and said that it was all right, but that the train would be about an hour late. Defendant challenges the sufficiency of this testimony to show that the liability of the defendant as a common carrier attached when the cattle were placed in the pens. We think this evidence fairly tends to show a delivery of the stock in defendant's pens for immediate shipment. In *Cleveland & T. R. Co. v. Perkins,* 17 Mich. 296, it was held that, when cattle have been delivered to and accepted by a railroad company for immediate shipment, the railroad company is liable as a common carrier for damages to the cattle from the time of the delivery to it. See, also, *Ayres v. Chicago & N. W. R. Co.,* 71 Wis. 372.

The next contention is that plaintiff's evidence is not sufficient to establish an unusual delay in the transportation of the cattle. His evidence did show that the usual time of transportation from Franklin to St. Joseph was about eighteen hours, and whether or not a nine hours' delay in this shipment, wholly unexplained, was unreasonable, we think, was a question of fact for the jury. While we do not hold that a railroad company is an insurer of the arrival of its trains on schedule time in the transportation of live stock or other freight, yet, where there is a material delay, the company must, to exonerate itself from liability, show that the delay arose from some cause other than its own negligence. *Denman v. Chicago, B. & Q. R. Co.,* 52 Neb. 140; *Galena & C. U. R. Co. v. Rae,* 18 Ill. 488; *Ayres v. Chicago & N. W. R. Co., supra; Baltimore & O. R. Co. v. Morehead,* 5 W. Va. 293; *McCoy v. K. & D. M. R. Co.,* 44 Ia. 424.

It is next contended that there is a fatal variance between the allegations of plaintiff's petition and the proof offered, in that plaintiff alleged on an oral contract with defendant for the shipment of the stock in controversy,

and that on his cross-examination by the defendant he admitted that he received a written bill of lading, containing certain conditions in the nature of a contract of shipment, after the stock was loaded in the cars. When a breach of plaintiff's contract for shipment, whether written or oral, occurred, he had the privilege of election, either to sue on the conditions of the contract of shipment, or to bring his action in damages for defendant's failure to observe the public duty enjoined upon it as a common carrier. He chose the latter. Consequently, his allegation of a contract for shipment was made by way of inducement to show his right to maintain the action against the defendant for a breach of its duty enjoined upon it by statute. *Denman v. Chicago, B. & Q. R. Co., supra.* Under the laws of this state, defendant's liability for unreasonable delay in the shipment was the same whether the contract on which the shipment was made was a written one or an oral one. Defendant pleaded no exemption from liability by reason of any contract. Consequently, it was wholly immaterial whether the contract was oral or written.

Complaint is lodged against the action of the trial court in giving and refusing instructions. We have carefully examined the instructions given and think they fairly submitted the issues to the jury. The instructions put the burden on the plaintiff to show an unreasonable and negligent delay in the transportation of the cattle, and specifically told the jury that it could not allow damages for delay, unless it found that such delay was caused by the want of ordinary care and diligence on the part of the defendant. The instructions refused were on the question of variance and on the question of plaintiff's contributory negligence in not feeding the cattle while waiting for shipment in the pens at Franklin. The question of variance we have already discussed, and, as there was neither allegation nor attempted proof of plaintiff's contributory negligence, the court was justified in not submitting these questions to the jury.

The quantum of damages is not alleged against in de fendant's brief, and, as we find no reversible error in the record, we recommend that the judgment of the district court be affirmed.

AMES and EPPERSON, CC., concur.

By the Court: For the reasons given in the foregoing opinion, the judgment of the district court is

AFFIRMED.