Sturgeon v. Gray.

No. 11,129.

STURGEON v. GRAY.

HABEAS CORPUS.—*Return.*—*Practice.*—*Harmless Error.*—Objection to the sufficiency of a return to a writ of *habeas corpus* should be taken by exceptions, and not by demurrer; but if the return be insufficient, and so held upon demurrer, the irregularity in practice is harmless.

CRIMINAL LAW.—*Justice of the Peace.*—*Practice.*—*Appeal.*—A justice of the peace can not render judgment against the accused in a criminal case in his absence, if imprisonment may, by law, be a part of the penalty for the offence, but he may receive the verdict of a jury, and bring the defendant in by warrant to receive judgment; and delay in so doing will not vitiate the judgment. In such case an appeal before judgment is a nullity.

SAME.—*Several Defendants.*—*Judgment.*—*Statute Construed.*—In a criminal prosecution against two defendants jointly, the judgment against those found guilty should be several, and not joint; and if one be absent on the return of a verdict, the rendition of judgment against one does not prevent a judgment against the other when brought in, and from that judgment he may appeal, under R. S. 1881, section 1643, within ten days thereafter.

MITTIMUS.—*Constable.*—*Statute Construed.*—A special constable may take a prisoner committed to jail, to the prison, though his name be not mentioned in the mittimus, notwithstanding section 1433, R. S. 1881.

SAME.—*Misnomer.*—*Habeas Corpus.*—The misnomer of a prisoner in a *mittimus* affords no reason for his discharge on *habeas corpus.*

From the Warren Circuit Court.

*J. G. Pearson,* for appellant.

*J. McCabe* and *E. F. McCabe,* for appellee.

HAMMOND, J.—Complaint by the appellee against the appellant for a writ of *habeas corpus,* as follows, omitting the title:

"Jacob Gray complains of Scott Sturgeon, and says, on his oath, that said Scott Sturgeon illegally restrains him of his liberty in the town of Williamsport, in said county; that the cause, or pretence thereof, is a *mittimus* issued by one Ab. V. Holmes, an acting justice of the peace of Washington township, in said county, directed to the jailer of said county, com-

manding him to confine the plaintiff in the county jail of said county for failure to pay or replevy a pretended judgment of said justice, rendered against said plaintiff for a fine and costs amounting to $64.65 ; that said Sturgeon claims to be acting as special constable, but is not named in said paper as such, or in any other manner, nor is he a constable or a marshal ; that said pretended judgment was rendered on the 20th day of June, 1883, upon a verdict returned by a jury on a trial had before said justice on a pretended charge of malicious trespass, preferred by Robert C. Anderson in an affidavit charging said crime against Jacob Gray and two others ; that said trial was had. and verdict [rendered] on — day of May, 1883 ; that said verdict found the said Jacob Gray and one Thomas Gray, another of the defendants charged in said affidavit, guilty, and assessed their fine at the sum of $10 each ; that no judgment was rendered or pronounced against the said Jacob Gray by said justice, but judgment, as affiant is informed, was pronounced against said Thomas Gray on said verdict ; that they took an appeal to the circuit court and entered into recognizance for their appearance in said circuit court to answer said charge in said affidavit, which was accepted by said justice and filed in the clerk's office with all the papers in said cause ; that afterwards, to wit, on the 20th day of June, 1883, said justice issued a warrant and caused said Jacob, plaintiff herein, to be brought before him, and then, for the first time, pronounced judgment against this plaintiff, upon said verdict, without having the said Thomas in said court, for all the costs and $10 fine, and entered up the judgment upon his record , that the illegality of said restraint consists in the fact that the said justice had no jurisdiction to pronounce judgment against the plaintiff after accepting his recognizance, or to cause his arrest, or to take any steps in the case after taking such recognizance ; that the said paper, called a *mittimus*, confers no authority on said Sturgeon ; that said justice could not render judgment on the verdict as-

sessing separate fines against the defendants, because said verdict was void. Wherefore he asks that the said restraint may be inquired into, and that he be discharged."

The complaint was subscribed and sworn to by the appellee in proper form. A writ of *habeas corpus* issued by direction of the court, to which the appellant made return as follows, omitting the title of the action:

"The defendant, for a return to the writ herein and for answer, says, that heretofore, to wit, on the —day of ———, 1883, the plaintiff and others were arrested on a warrant issued by Henry Ritenour, an acting justice of the peace, in and for Washington township, in said county, on a charge of having committed a malicious trespass, at said county, on or about the 25th day of March, 1883; that said plaintiff and his co-defendants in said prosecution demanded a jury trial; that said jury, deliberating a reasonable length of time, reported to the said justice that they were unable to agree upon a verdict, and thereupon were discharged; that said defendants Jacob Gray and Thomas Gray took a change of venue from said justice, and said cause was certified to Ab. V. Holmes, an acting and qualified justice of said township; that on the 14th day of May, 1883, plaintiff herein and said Thomas Gray appeared before said justice for trial on said charge, and said cause was submitted to a jury; that said jury returned a verdict of guilty, assessing a fine of $10 against each of the defendants, Jacob and Thomas Gray; that said plaintiff was voluntarily absent from the court room when said verdict was returned, having, without leave, gone to his home fourteen miles away, and, although three times duly called, failed to appear in said court; that upon the return of said verdict no judgment thereon was rendered of record, and during the absence of said plaintiff the defendants' attorney in said prosecution prayed an appeal to the Warren Circuit Court, and said defendants entered into a recognizance; that the plaintiff herein was not present, and did not sign said recognizance, but his name was signed thereto by Thomas Gray; that said appeal.

Sturgeon v. Gray.

was dismissed, and the papers certified back to said justice; and that afterwards said justice issued his warrant for the arrest of said plaintiff, and placed the same in .the hands of John R. Hunter, a special constable, who arrested said plaintiff and brought him before said justice on the 20th day of June, 1883, when said justice, in the presence of said plaintiff, pronounced and rendered of record a judgment in due form against said plaintiff on the verdict of said jury; that said plaintiff then and there failing to pay or replevy said judgment, said justice issued a *mittimus* to the jailer of Warren county, and placed the same in the hands of this defendant, a special constable, appointed by said justice to convey said plaintiff to the jailer of said county; that by virtue of said *mittimus*, a copy of which is hereinafter filed and made a part of this return, and said appointment, and the facts herein set forth, this defendant restrains said plaintiff, as he well may do, and has him now in said court."

The return was subscribed and sworn to by the appellant.

A copy of the *mittimus* referred to was filed with the return as follows:

." STATE OF INDIANA, WARREN COUNTY, ss:

" The State of Indiana, to the jailer of Warren county: Whereas, *Jake* Gray has been arrested and tried before me and adjudged guilty of having committed a malicious trespass at said county, and fined in the sum of $10, and costs taxed at $54.65, making in all the sum of $64.65, for which judgment was rendered, and having failed to pay or replevy said judgment, you are, therefore, commanded to confine him in the county jail until discharged by law. Dated this 20th day of June, 1883.

(Signed)    "AB. V. HOLMES, J. P."

The appellee, designating the return as an answer, demurred to it, on the ground that.it did not state facts sufficient to constitute a defence to his complaint. The court sustained the demurrer; appellant excepted; the court then made an order discharging the appellee from custody. Errors are

assigned for sustaining the demurrer to the return, and for discharging the appellee.

The correct method of testing the sufficiency of a return to a writ of *habeas corpus* is by exceptions, not by demurrer. Section 1117, R. S. 1881; *Cunningham* v. *Thomas*, 25 Ind. 171; *McGlennan* v. *Margowski*, 90 Ind. 150. If, however, the return was insufficient to show that the appellant legally restrained the appellee of his liberty, the error of sustaining the demurrer might be regarded as harmless, and the judgment would not be reversed merely for the irregularity of the procedure. *McGrew* v. *McCarty*, 78 Ind. 496. It is plain, then, that there is but one question in the case, namely, Does the appellant's return to the writ of *habeas corpus* show that he had legal custody of the appellee?

Before the present code, the law prescribing the powers and duties of justices of the peace in State prosecutions was embraced in an act by itself. 2 R. S. 1876, p. 668. But in "An act concerning proceedings in criminal cases," approved April 19th, 1881, the law governing such proceedings before justices of the peace and in the circuit and criminal courts is brought together in one enactment. Acts 1881, p. 114; sections 1573–1901, R. S. 1881. It will be observed, in reading this act, that some of its provisions relate solely to proceedings in criminal cases before justices of the peace; others, to such proceedings in the circuit and criminal courts; while others apply to all the courts, including those of justices of the peace. This statement is made, as our statutory references as to procedure in criminal cases will be to those provisions relating, either in a special or general way, to justices' courts.

The facts stated in the complaint and in the return to the writ show that the offence with which the appellant was charged before the justice was within the justice's jurisdiction. There is no attempt made in the appellee's complaint to show that there was any irregularity in the proceedings prior to the return of the verdict. The designation in the

complaint of some of the proceedings as "pretended" and "void" is a conclusion rather than the statement of a fact, and adds no force to the pleading. A mere irregularity would not, of course, render the proceedings void; but as we understand the position of appellee's counsel, it is that the judgment of conviction was void: First, because of the delay of the justice, from May 14th, 1883, when the verdict was returned, to the 20th of the following month, in pronouncing and rendering judgment upon the verdict; and secondly, because, as is claimed, the justice, after granting the appellee an appeal to the circuit court on the verdict of the jury, lost jurisdiction of the case, and could not afterwards render judgment upon the verdict.

Section 1489, R. S. 1881, limiting and fixing the time in certain cases in which justices shall render judgment, applies only to civil actions. In the recent case of *Martin* v. *Pifer*, *post*, p. 245, we had occasion, in construing this section, to hold that where, by the statute, a judgment was required to be rendered immediately upon the return of the verdict, a delay of six days in entering and signing it did not make it void. There is no statute fixing the time in which, after finding or verdict, judgments shall be rendered by justices in criminal cases. It was held in *Wright* v. *Fansler*, 90 Ind. 492, that a judgment was valid which was not entered by the justice for nearly two years after the preliminary examination and acquittal of one charged with larceny. It was said in that case: "The reasons which require the recording and signing of a judgment in ordinary civil actions do not apply to criminal prosecutions, and the statute" (section 1489, *supra*) "in terms applies only to civil proceedings. Independently of statute a justice may, at any time, enter his judgment of record."

The reasoning of the court in that case is quite applicable to the present, though the decision related and was properly limited to a judgment of acquittal.

The offence with which the appellee was charged in the af-

fidavit before the justice was malicious trespass, under section 1955, R. S. 1881. A part of the punishment for that offence may be imprisonment in the county jail. In such case the accused must be present at the trial. Section 1786, R. S. 1881. But if he is present. at the commencement of the trial, his subsequent voluntary absence does not prevent the case from proceeding as far as the return of the verdict. *McCorkle* v. *State*, 14 Ind. 39; *State* v. *Wamire*, 16 Ind. 357. But it seems in all cases, other than those punishable by fine only, the accused must be present at the rendition of the judgment. Section 1851, R. S. 1881. The appellee was present when the trial began, but was voluntarily absent when the verdict was returned. Judgment could not, therefore, at that time, be rendered against him. But this did not prevent the justice from rendering judgment against the appellee's co-defendant, who was also found guilty by the jury, and who was present at the return of the verdict. If both defendants had been present, a separate judgment should have been rendered against each. Several persons may be jointly accused of crime, but, if they are convicted, the judgment should be rendered against them severally, not jointly. *State* v. *Hopkins*, 7 Blackf. 494; *State* v. *Kinneman*, 39 Ind. 36.

The rendering of a separate judgment against the defendant who was present could not in any way affect the appellee.

For the purpose of rendering judgment, the appellee's personal attendance before the justice was necessary. To secure his presence for the purpose of rendering judgment, it was the duty of the justice to issue a warrant for his arrest. Section 1853, R. S. 1881. In the interest of the proper enforcement of the law, the justice undoubtedly should not have delayed the performance of this duty from May 14th until the 20th of the next month. But we can not see how the appellee may complain of the delay. The complaint does not disclose, nor are we able to understand, how he was harmed by the judgment not having been rendered sooner. We may

presume it would have been rendered sooner had he appeared before the justice and made a request to that effect.

The delay in rendering judgment did not affect the appellee's right of appeal. He had this right for ten days after the rendition of the judgment, on June 20th.

As to an appeal from a justice's judgment in a criminal case, the statute provides: "Any prisoner against whom any punishment is adjudged may appeal to the criminal court, and, if there be none, then to the circuit court of the county, within ten days after trial, on entering into recognizance for his appearance at the next term of such court, as in other cases; and such appeal shall stay all proceedings." Section 1643, R. S. 1881. The word "trial," as used in the above section, must be held to include all the steps taken in the cause, from its submission to the jury to the rendition of the judgment. *Jenks* v. *State*, 39 Ind. 1; *Pitzer* v. *Indianapolis, etc., R. W. Co.*, 80 Ind. 569; *Bruce* v. *State*, 87 Ind. 450.

It is manifest from section 1643, *supra*, that no appeal lies from a case tried before a justice until after judgment. The appeal taken by, or in behalf of, the appellee after verdict and before judgment, was a nullity. It did not transfer the case as to the appellee to the circuit court. That court properly dismissed the appeal as to the appellee. The justice's granting the appeal and approving the recognizance as to the appellee could not in any way prejudice the right of the State to have the case proceed to judgment.

It was competent for the justice of the peace to appoint a special constable to deliver the appellee, with the *mittimus,* to the county jailer. Sections 1439 and 1633, R. S. 1881. The first of the above sections provides that where a special constable is appointed, process shall be directed to him by his name. But this refers to process usually directed to a constable, commanding him to perform some act therein named. But a *mittimus* is addressed to the jailer. It is a command to the jailer to receive and safely keep a person, charged with or convicted of an offence therein named, until discharged as

provided by law. It is the duty of the justice to commit to jail every defendant, adjudged to pay a fine and costs, who does not immediately pay or replevy the same. Section 1647, R. S. 1881.

The omission to give the appellee's christian name correctly in the *mittimus* was harmless. It could have been corrected upon motion before the justice, but furnished no ground for the appellee's discharge. The complaint, as well as the return to the writ, shows that the appellee was the person designated in the *mittimus* as the one to be committed. This was sufficient. The identity of his person was important. The correctness of his name was important only so far as it became essential to secure his commitment.

The appellant's return to the writ showed that the appellee was in custody upon process issued upon a final judgment by a court of competent jurisdiction, and that the term of his commitment had not expired. In such case the statute expressly provides that no court or judge in a proceeding of *habeas corpus* shall inquire into the legality of the judgment, or discharge the prisoner. Section 1119, R. S. 1881.

Our conclusion is that the appellant's return to the writ was sufficient, and that there was error in sustaining the demurrer to it.

Reversed, at appellee's costs, with instructions to overrule the demurrer to the return, and for further proceedings.

