The Cincinnati, Indianapolis, St. Louis and Chicago Railway Co. v. Case.

No. 13,948.

THE CINCINNATI, INDIANAPOLIS, ST. LOUIS AND CHICAGO RAILWAY COMPANY v. CASE.

PLEADING.—*Contract Made for Plaintiff's Benefit.—Direct Allegation.—Absence of.*—Where, in a complaint upon a contract, there is no direct allegation that the contract was made between the defendant and the plaintiff in the name of another for the plaintiff's benefit, but from all the averments therein that fact clearly appears, the complaint is sufficient.

COMMON CARRIER.—*Transportation of Live Stock.—Shipment within Reasonable Time.*—Where a contract with a carrier for the transportation of live stock fixes no time for shipment, they must be shipped within a reasonable time, which must depend upon the circumstances of the particular case.

SAME.—*Shipment.— What is not Reasonable Time.*—Where there is a delay in shipment from Friday, 6 P. M., till Saturday, 4 A. M., the carrier having means of shipment at hand when the stock are delivered, and in consequence they arrive at their destination too late for the Saturday market, and have to be cared for till Monday, the shipment will not be deemed to have been made within a reasonable time.

The Cincinnati, Indianapolis, St. Louis and Chicago Railway Co. *v.* Case.

PRACTICE.—*Motion for New Trial.—Arrest of Judgment.*—It is too late for a motion for a new trial after a motion in arrest of judgment.

From the Benton Circuit .Court.

*D. E. Straight* and *U. Z. Wiley,* for appellant.

*M. H. Walker, I. H. Phares, D. Fraser, E. P. Hammond* and *W. B. Austin,* for appellee.

COFFEY, J.—This was an action by the appellee against the appellant to recover damages for negligent delay in shipping appellee's cattle from the town of Fowler to the city of Indianapolis.

So much of the contract under which the cattle were shipped as is material to the controversy here, is as follows:

"FOWLER STATION, December 11, 1885.

"Memorandum of agreement made and concluded this day by and between the Cincinnati, Indianapolis, St. Louis and Chicago Railway Company, of the first part, by the station agent at above-named station, and Jeffery, Herriott & Co., of the second part, witnesseth :   That whereas, the said Cincinnati, Indianapolis, St. Louis, and Chicago Railway Company transport cattle, hogs, horses, pigs, sheep, lambs, calves, or other live stock only as per tariff in use at this date for stock per car loads, or when taken less than car loads, as per special rates published on the tariff prices : Now, in consideration that the said party of the first part will transport, for the party of the second part, such live stock at the rate of $22 per car load, or other valuable consideration, the said party of the second part does hereby agree to take the risk of injury which the animals, or either of them, may receive in consequence of any of them being wild, unruly, weak, escaping or maiming each other, or themselves, or from delays, or in consequence of heat, suffocation, or other ill effects of being crowded in the cars, or on account of their being injured by the burning of hay, straw, or other material used by the owner for feeding stock, or otherwise, and for any damages occasioned thereby ; and also all risk for damages

which may be sustained by reason of any delay in such transportation, and that he will see to it that the cattle, etc., are securely placed in the cars furnished, and that the cars are properly and safely fastened so as to prevent the escape of live stock therefrom. * * * And this agreement further witnesseth : That the said party of the second part has this day delivered to the said Cincinnati, Indianapolis, St. Louis and Chicago Railway Company three car-loads of cattle, to be transported to Indianapolis station, on the conditions above described.        R. RICHMIRE, *Station Agent.*

"H. S. CASE."

The complaint is based upon the above contract, and alleges, in substance, that on the 11th day of December, 1885, at the town of Fowler, the appellee delivered to the appellant, a common carrier of live stock for hire, fifty-one head of cattle to be carried by appellant for appellee, in three cars, from said town of Fowler to the city of Indianapolis, and there to be delivered for the appellee to Jeffery, Herriott & Co., who were commission merchants, and who were to sell said property for appellee; that appellee agreed to pay appellant $22 per car for transporting said cattle; that on delivery of said cattle as aforesaid, appellant executed and delivered to appellee a bill of lading for said cattle, a copy of which is filed with the complaint; that appellee performed all the conditions of said bill of lading on his part, but that appellant did not perform the conditions of said bill of lading on its part, in this, to wit: That said appellant after receiving said cattle on board its cars at the town of Fowler, without any fault on the part of the appellee, carelessly and negligently failed to move said cars, upon which said cattle were loaded, from 6 o'clock P. M., on the 11th day of December, 1885, until 4 o'clock A. M., on the 12th day of December, 1885; that if said cattle had been shipped by appellant when delivered, as they might have been by a train which then left for the city of Indianapolis, said cattle would have arrived at Indianapolis in good condition at

4 o'clock A. M. on December 12th, and would have been ready for the market on that morning, but in consequence of said delay in shipping they did not arrive at Indianapolis in time for the market on said day, which was Saturday, and in consequence thereof there was no market for said cattle until the following Monday; that between said Saturday morning and the Monday morning following, there was a fall in the price of cattle in said market of the sum of seven dollars on each head; that on account of the delay in shipping said cattle they were delayed in being fed for the period of eleven hours, by reason of which they became excited and unmanageable, and hooked, tramped upon and crowded each other, by reason of which fifteen head of said cattle were rendered wholly worthless, and all the others were rendered unsalable when they arrived at Indianapolis, for the period of one week; and by reason of all which appellee was damaged in the sum of $1,000.

The appellant filed a demurrer to this complaint for want of sufficient facts to constitute a cause of action, which was overruled, and it excepted.

Upon issues formed the cause was tried by a jury, who returned a verdict for the appellee.

Appellant moved in arrest of judgment, which was overruled, and an exception taken.

Appellant then filed its motion and reasons for a new trial, which was overruled and exception reserved. Judgment on verdict.

The first and second errors assigned here call in question the sufficiency of the complaint, and the third questions the propriety of the ruling of the circuit court in overruling the motion for a new trial.

The first objection to the complaint urged by the appellant, is that the contract upon which it is based is a contract between the appellant and Jeffery, Herriott & Co., and not a contract between the appellant and the appellee.

It is not denied by the appellee that the contract in suit

appears upon its face to be a contract between the appellant and Jeffery, Herriott & Co., but it is contended that it appears by the complaint that the contract was in fact made with the appellee, for his benefit, in the name of Jeffery, Herriott & Co. If the complaint contained a direct allegation that the appellant made the contract with the appellee, under the name of Jeffery, Herriott & Co., we would be relieved of any difficulty upon this branch of the case, for it seems to be settled that where a contract is made with a party under a name different from that of his true name, he may enforce the same in his true name. *Leaphardt* v. *Sloan,* 5 Blackf. 278; *McKinney* v. *Harter,* 7 Blackf. 385; *Rhyan* v. *Dunnigan,* 76 Ind. 178; *Sturgeon* v. *Gray,* 96 Ind. 166.

While there is no direct allegation in the complaint that the contract in suit was executed between the appellant and the appellee in the name of Jeffery, Herriott & Co., we think that fact distinctly appears in the complaint. It appears from the complaint that the appellee was the owner of the cattle in controversy; that he delivered them to the appellant at the town of Fowler, to be shipped to the city of Indianapolis for delivery to Jeffery, Herriott & Co., who were commission merchants at that city, to be sold for the appellee, and that the contract in suit was signed by its station agent at Fowler and by the appellee, and delivered to the appellee. It is thus shown that Jeffery, Herriott & Co. had no interest in the property until it was received by them, and then none except to the extent of the commission they might receive for the sale of the cattle for the appellee as his agent. We are of the opinion, therefore, that it sufficiently appears from the complaint that the contract in suit was made between the appellant and the appellee under the name of Jeffery, Herriott & Co.

There was no objection to the complaint on account of defect of parties.

It is also urged as an objection to the complaint that it does not appear therefrom that the appellant was under any

obligation to ship the cattle to the city of Indianapolis at an earlier date than that at which they were shipped.

The contract before us does not fix any period within which the cattle therein named were to be shipped. In such cases the law supplies the omission, and requires that they should be shipped within a reasonable time. What is a reasonable time must, of necessity, depend upon the nature of the thing to be done and the circumstances surrounding the particular case. And here again, if the appellee had 'made the direct allegation that his cattle were not shipped within a reasonable time, we would be relieved from the difficulty surrounding this branch of the case. It is contended by the appellee, however, that it appears from the complaint that the cattle were not shipped within a reasonable time. The allegations from which it is contended this fact appears are, that " the appellant after receiving said cattle on board its cars at the town of Fowler, without any fault on the part of the appellee, carelessly and negligently failed to move said cars upon which said cattle were loaded, from 6 o'clock P. M., on the 11th day of December, 1885, until 4 o'clock A. M., on the 12th day of December, 1885; that if said cattle had been shipped by appellant when delivered, as they might have been, by a train which then left for the city of Indianapolis, said cattle would have arrived at Indianapolis in good condition at 4 o'clock A. M. on December 12th, and would have been ready for market on that morning, but in consequence of said delay in shipping, they did not arrive at Indianapolis in time for the market on said day, which was Saturday, and in consequence thereof there was no market for said cattle until the following Monday."

Knowing that it was necessary to feed, water and care for the cattle, if the appellant had the means at hand to ship them on Friday, and neglected to do so, and knowing that by shipping them on Saturday they would arrive at their destination after the close of business hours, by reason of which the appellee would be required to feed and care for

them over Sunday, under such circumstances we do not think it can be said that they were shipped within a reasonable time. In our opinion it does appear from the complaint that the appellant did not comply with its obligation to ship the appellee's cattle within a reasonable time.

It is also urged that it does not appear from the complaint that the appellee was the owner of the cattle, or that he sustained any damage by reason of the failure of the appellant to transport the cattle on Friday the 11th day of December. It is plainly to be inferred from the allegations in the complaint that the appellee was the owner of the cattle, and we think the complaint discloses the fact that he has sustained substantial damages.

The complaint is uncertain and indefinite in many of its allegations, and can not be recommended as a model pleading, but with all its defects, we think it states a cause of action against the appellant.

No objection to the ruling of the circuit court in overruling the motion in arrest of judgment is urged in this court. It is not even assigned here as error.

It is now claimed by the appellee that as the motion in arrest of judgment preceded the motion for a new trial, the right to move for a new trial was cut off, and that it can not, for that reason, be considered. Such seems to be the established practice in this state. *Mason* v. *Palmerton*, 2 Ind. 117; *Rogers* v. *Maxwell,* 4 Ind. 243; *Bepley* v. *State,* 4 Ind. 264; *Sherry* v. *Ewell,* 4 Ind. 652; *Hord* v. *Noblesville,* 6 Ind. 455; *Doe* v. *Clark,* 6 Ind. 466; *Smith* v. *Porter,* 5 Ind. 429; *Marion, etc., R. R. Co.* v. *Lomax,* 7 Ind. 406; *Anthony* v. *Lewis,* 8 Ind. 339; *Van Pelt* v. *Corwine,* 6 Ind. 363; *Bates* v. *Reiskenhianzer,* 9 Ind. 178; *Shrewsbury* v. *Smith,* 12 Ind. 317.

It is claimed by the appellant that no good reason can be given for the rule established by these numerous cases, and that, therefore, they should be overruled. But it must not be forgotten that they establish a rule of practice which has prevailed in this State for many years, well understood by

the profession. A rule so firmly established and so well understood as this should not be disturbed, except for some strong reason. The rule can work no hardship, as a party may, after a motion for a new trial, move in arrest of judgment and thus secure the benefit of both motions. We know of no good reason why this long list of cases should be overruled. We find no error in the record.

