## J. B. BUSHNELL, Respondent, v. THE WABASH RAILROAD COMPANY, Appellant.

### Kansas City Court of Appeals, June 4, 1906.

1. **COMMON CARRIERS: Shipper's Contract: Parties.** Where a contract of shipment is signed by the shipper's agent for the sole benefit of the shipper the latter may maintain an action therefor without any assignment, since his right to sue springs from his beneficial interest in the contract itself.

2. ———: ———: **Destination: Connecting Carrier.** A contract for shipment of live stock stated no destination but opened with the shipper's offer to ship over the carrier's road and connecting lines so many cattle from a certain point to another certain point, the destination being beyond the carrier's line. *Held,* the contract was one to ship to the destination and makes the carrier liable for the negligence of the connecting carrier.

3. ———: **Delays: Negligence: Evidence: Burden of Proof.** Where the contract of shipment relieves the carrier from liability for delays the burden devolves upon the shipper to show that unusual and injurious delays were the result of the carrier's negligence and not such as were unavoidable in the exercise of due care.

4. ———: ———: ———: ———. Where the delay alone would not support an inference of negligence, yet from the relation existing between the carrier and the shipper slight circumstances tending to show the negligent origin of the unusual delay will support an inference of negligence, especially where the means of showing how the delay occurred is with the carrier and not the shipper; evidence reviewed and held sufficient to send the question of negligence to the jury.

5. ———: **Loss: Live Stock: Measure of Damages.** A stipulation in a shipping contract limiting as full compensation for all loss of damages of the cattle shipped to the amount actually expended for food and water, is not the true measure of damages where the stock has been lost or injured by the negligent delays of the carrier; but the shipper may recover actual damages sustained as the direct result of the negligence within the sum for which the animals affected were valued in the contract.

6. ———: ———: **Notice: Sufficiency of.** Where the shipper gives the notice required by the contract within the required time and the carrier, without objection, acts upon the same and finally rejects the claim because of want of liability, the irregularities and informalities of the notice are waived.

Appeal from Chariton Circuit Court.—*Hon. John P. Butler*, Judge.

AFFIRMED.

*Geo. S. Grover* for appellant.

(1) The plaintiff was not entitled to recover in this action any damages whatever on the shipments of either Alex. Guthridge or Steve Bushnell. R. S. 1899, sec. 540. (2) The undisputed proof here shows that the damages here sued for accrued upon the defendant's connecting line. At common law and under the contracts of shipment, the defendant was not responsible therefor. Coates v. Express, 45 Mo. 238; Nines v. Railroad, 107 Mo. 475; McCann v. Eddy, 133 Mo. 59; Myrick v. Railroad, 107 U. S. 102. (3) There is a failure of proof in this action as to any negligence on the part of defendant. The burden of proof was upon the plaintiff to show this essential fact. For that reason he should have been non-suited. Sturgeon v. Railroad, 65 Mo. 569; Witling v. Railroad, 101 Mo. 640. (4) The damages here claimed were either waived or liquidated by the express provisions of valid contracts of shipment. Coates v. Express Co., 45 Mo. 238; Nines v. Railroad, 107 Mo. 475; McCann v. Eddy, 133 Mo. 59; Myrick v. Railroad, 107 U. S. 102; Brown v. Railroad, 18 Mo. App. 568; Vaughn v. Railroad, 78 Mo. App. 639; Harvey v. Railroad, 74 Mo. 546; Kellerman v. Railroad, 136 Mo. App. 190; Hart v. Railroad, 112 U. S. 341; Cau v. Railroad, 194 U. S. 431; Railroad v. Pearce, 192 U. S. 179. (5) The court gave improper instructions of its own motion. See authorities cited supra; Garisk v. Railroad, 49 Mo. 274; Fink v. Ins. Co., 60 Mo. App. 677; Smith v. Shell, 82 Mo. 215; Mensing v. Ins. Co., 36 Mo. App. 602; Maddox v. Ins. Co., 39 Mo. App. 198; McCullough v. Ins. Co., 113 Mo. 606; Ely v. Railroad, 77 Mo. 34. (6) The court

refused proper instructions asked by defendant. Authorities cited, supra; Davenick v. Railroad, 57 Mo. App. 556; Cau v. Railway, 194 U. S. 431.

*J. A. Collet* for respondent.

(1)   This suit was properly prosecuted in the name of J. B. Bushnell, the real owner of the stock, and party in interest. R. S. 1899, sec. 540; Summers v. Railway, 79 S. W. 481.   (2)   Neither the pleadings nor the evidence in this case present the question that these shipments of stock were made over any other than the Wabash railroad, and even it were true that the damages resulted from the negligence of connecting carriers, still, defendant, having contracted to carry the stock to their destination, is responsible to plaintiff for damages resulting to him, either from the negligence of itself or connecting carriers.   McCann v. Eddy, 133 Mo. 59; Sash & Door Co. v. Railway, 177 Mo. 641; Nenno v. Railway, 105 Mo. App. 540; Mfg. Co. v. Railway, 101 Mo. App. 442; Grain Co. v. Railway, 176 Mo. 480; Aiken v. Railway, 80 Mo. App. 8; Jones v. Railway, 89 Mo. App. 653; Railroad v. McCann, 174 U. S. 580.   (3)   The delays proven, unexplained by defendant, constitute sufficient proof of defendant's negligence to authorize a recovery in this case. Sloop v. Railroad, 93 Mo. App. 605; Anderson v. Railway, 93 Mo. App. 677; Botts v. Railroad, 106 Mo. App. 397; Ball v. Railroad, 83 Mo. 574.   (4)   The contracts of shipment in this case could not relieve defendant from liability for loss occasioned by its negligence.   McFadden v. Railway, 92 Mo. 343; Minter v. Railway, 82 Mo. App. 130; Anderson v. Railway, 93 Mo. App. 677; Botts v. Railroad, 106 Mo. App. 397; Ball v. Railroad, 83 Mo. 574; Ward v. Railway, 158 Mo. 226; Witting v. Railway, 101 Mo. 631; Cau v. Railway, 194 U. S. 431; Pope v. Ramsey, 78 Mo. App. 157; Strother v. DeWitt, 98 Mo. App. 293.   (5)   The notices of these losses having been given to defendant within the time required by the ship-

ping contract, and no objection having been made to the fact that the claims for damages were not verified, defendant not only waived a strict compliance with the contract in that regard, but is also estopped from insisting on more literal and strict compliances therewith after the expiration of the time within which it could have been done. McCullough v. Ins. Co., 113 Mo. 606; Andrus v. Ins. Assn., 168 Mo. 151; Fowble v. Ins. Co., 100 Mo. App. 527; Live Stock Co. v. Railway, 100 Mo. App. 674; Fink v. Ins. Co., 60 Mo. App. 673; Summers v. Railway, 79 S. W. 481; Ward v. Railway, 158 Mo. 226; Dezell v. Fidelity & Casualty Co., 176 Mo. 253. (6) The court committed no error in giving the instruction upon its own motion, nor in refusing instructions. Ball v. Railway, 83 Mo. 574; Anderson v. Railway, 93 Mo. App. 677; Sloop v. Railway, 93 Mo. App. 605; Live Stock Co. v. Railway, 100 Mo. App. 674; Summers v. Railway, 79 S. W. 481; Botts v. Railway, 106 Mo. App. 397; McFadden v. Railway, 92 Mo. 343; Minter v. Railway, 82 Mo. App. 130; Ward v. Railway, 158 Mo. 226.

JOHNSON, J.—Action against a common carrier to recover damages resulting from negligent delay in the transportation of live stock to market.

The petition is in two counts. In the first, it is alleged that on April 7, 1904, at 7 o'clock p. m., plaintiff delivered to defendant at Keytesville for shipment to the National Stock Yards at East St. Louis, Illinois, sixty-two head of cattle and ninety-two head of hogs, the property of plaintiff, that the stock was loaded in cars and ready to go forward at the hour mentioned and defendant accepted the shipment and agreed for hire to carry the stock to its destination within a reasonable time; that eleven hours was a reasonable time, but defendant carelessly and negligently delayed the stock in transportation and consumed nineteen and one-half hours from the beginning to the end thereof; that, had due care been

observed, the stock would have arrived at the stock yards early in the morning of the following day, in time for the early market, but, as it was, that day's market was closed before its arrival, that the value of such stock declined on the next day's market and plaintiff suffered loss from that cause as well as from shrinkage in weight occasioned by the unusual delay and expense incurred in feeding and caring for the stock during the time plaintiff was compelled to hold it over. The amount of the damage stated was $131.72.

In the second count, plaintiff seeks to recover damages that followed a like delay in the shipment of two hundred and thirty-four head of hogs, which defendant received at Keytesville on May 31, 1904, at 7 o'clock p. m. for delivery at the National Stock Yards in East St. Louis. The amount of the damage claimed in this count is $97.16.

In the answer, defendant averred that the two shipments were made under the provisions of five written contracts. In the first, the hogs were shipped under a contract signed by plaintiff, twenty-two head of the cattle were forwarded under a contract also signed by plaintiff and the remainder of the cattle under a contract signed by Alex. Guthridge as shipper. In the second shipment, one hundred, seventeen head of the hogs were shipped under a contract signed by plaintiff and the remaining one hundred, seventeen head under one signed by Steve Bushnell, plaintiff's father. These five instruments are identical in form and contain a number of limitations upon defendant's common law liability, all of which are based upon the recited consideration of a reduced rate. Several of them are employed in the answer to support defenses interposed and such will receive consideration in the ensuing discussion. Defendant pleaded and offered proof tending to show compliance with the regulations of the Interstate Commerce Law. Plaintiff made no effort to show that the rates fixed in the contracts were not in fact reduced

rates and the case was tried by both parties and the court on the assumption that the contracts were valid and bound the parties to the extent permitted by law. In our treatment of the case, we will take the same position.

Plaintiff's reply was a general denial. At the close of the evidence, defendant requested an instruction in the nature of a demurrer to the evidence, which was refused, the issues were submitted to the jury and a single verdict was returned on both counts in the sum of $228.88. Judgment was entered on this verdict and defendant appealed.

Defendant argues, that, as the judgment is indivisible and includes damages sustained under each of five separate shipments, it cannot stand because two of the shipments were made in the names of persons other than plaintiff, that, with respect to the stock forwarded under the Guthridge and Steve Bushnell contracts, defendant sustained no contractual relation to plaintiff, did not know that plaintiff claimed to be the owner of that property, and, as no assignments of these contracts or of the causes of action arising under them were made to plaintiff, he cannot recover either in virtue of his actual ownership of the property or as trustee of an express trust. It is not shown that defendant knew that plaintiff was in fact the owner of the stock shipped in the names of these other persons, but the fact of his ownership at the time of shipment is established by uncontradicted evidence and in the circumstances disclosed entitles him to prosecute the action in his own name without an assignment of the contracts or causes of action dependent upon them. Section 540, Revised Statutes 1899, requires that "every action shall be prosecuted in the name of the real party in interest." Plaintiff alone sustained any damages in consequence of defendant's breach of contract. The nominal shippers had neither title to, nor interest in, the property. The contracts must be held to have been made for the sole benefit

of plaintiff as shipper, and it is well settled "that a contract between two parties upon a valid consideration may be enforced by a third party when entered into for his benefit, though such third party be not named in the contract." [St. Louis to use v. Von Phul, 133 Mo. 561; Devers v. Howard, 144 Mo. 671.] In such case, the party for whose benefit the contract was made may prosecute an action thereon in his own name. [Summers v. Railroad, 79 S. W. 481; Meyer v. Lowell, 44 Mo. 328; Flanagan v. Hutchinson, 47 Mo. 237; Rogers v. Gosnell, 51 Mo. 466; Ellis v. Harrison, 104 Mo. 270.] And it is immaterial that the contract has not been formally assigned to him. His right to sue is not derived by assignment or transfer from the nominal party, but springs from his own beneficial interest in the contract itself.

The eastern terminus of defendant's line is at Luther on the west side of the Mississippi river. The stock yards are across the river some eight or ten miles distant, and stock for that place is delivered by defendant to a connecting carrier at Luther. The contracts, in effect, provide that in consideration of the reduced rate the liability of defendant does not include responsibility for the acts of its connecting carrier. It is claimed the evidence shows that while delays occurred in both cases on the line of defendant, the shipments reached Luther and were delivered to the connecting carrier in time for the stock to have been delivered by the latter carrier at the stock yards for the best of the markets to which the respective shipments were made. In other words, that the negligent delays that produced the injuries resulted from the acts of the connecting carrier. Defendant says that the contracts exempt it from liability for the consequences of such acts.

The contracts do not state the destination of the shipments, but each begins with an offer made by the shipper, of which the following is a copy: "To the Wabash Railroad Company: The undersigned offers for shipment over your railroad and connecting lines

twenty-two head of cattle from Keytesville to Nat. St'k Yds., Ill.," etc. And each on the back bears this indorsement: "From Keytesville, Mo., to National Stock Yards, Ills." In the case of Buffington & Lee v. this defendant, 118 Mo. App. 480, we had occasion to deal with the question now presented under facts identical with those before us. We held adversely to the contention of defendant and in support of a similar ruling, which we think should be made in the present case, refer to the opinion in that case and the authorities therein cited.

The contracts in terms restricted defendant's liability to that resulting from negligence and it is argued that plaintiff has failed to introduce any evidence tending to show that the delays were caused by any act of negligence either of defendant or its connecting carrier. Plaintiff, who accompanied both shipments, testified that the first one left Keytesville at 7 o'clock p. m. and good time was made in the run to Moberly — "We got to Moberly about 10:30 and left about 1:30, about three hours waiting for 96 to come. This train is made up at Moberly of two trains, one from the west and one from the north, and they told me they were waiting for 96, that was the reason of the delay. We got out of Moberly at 1:30; they were stopping all along the road. I don't know what the delays were. They stopped at St. Charles and put in a new boxing there in one of the cars." The train reached Luther at about 7:30 o'clock in the morning and soon thereafter the cars containing plaintiff's stock were delivered to the connecting carrier. They were not delivered at the stock yards, less than ten miles away, until 3 o'clock in the afternoon. Plaintiff left the train at Luther and does not know the cause of the final delay.

Defendant's witnesses admit that the train was two hours late in leaving Moberly caused by waiting for the train from the north which was known to be two hours late. The conductor in charge of the train from Moberly

to Luther testified that they left Moberly at 1:30 o'clock a. m. and arrived at Luther at 12:15 p. m. and on the trip encountered these delays. "At Sturgeon, 45 minutes meeting passenger train No. 7 and letting passenger train No. 4 pass; at Centralia 45 minutes waiting for passenger train No. 14 to pass; at Mexico 15 minutes caused by train (passenger train No. 14 as aforesaid which was then ahead of my said train, stopping there on account of some trouble with its engine; at High Hill 20 minutes to clean the fire of the engine on my said train; at Truesdale 5 minutes waiting for orders; at O'Fallon 5 minutes waiting for orders; at St. Peters 10 minutes to meet passenger train No. 13; at St. Charles 53 minutes meeting passenger train No. 3 and letting passenger train No. 10 pass; at Ferguson 20 minutes meeting freight train No. 65 and passenger train No. 15." Eleven hours, it was shown, ordinarily sufficed for the entire transportation of stock from Keytesville to the National Stock Yards and it thus appears from the testimony of plaintiff that the delays that lengthened this time and produced the injury occurred partly on defendant's own line and partly on that of the connecting carrier, while from the testimony of defendant's conductor it is shown that the delays that prevented the arrival of the stock in time for market occurred altogether on defendant's line.

Conceding that defendant as a common carrier had the right to contract with plaintiff (upon a sufficient consideration) against liability on account of delays in the transportation of plaintiff's property, such provision will be enforced only to the extent of relieving defendant from liability for delays that were not caused by its own negligence. Defendant's duty as a carrier, which it could not cast off by contract, required it to use reasonable care and diligence in the performance of the transportation. But with the contracts containing the provision under consideration in evidence, the burden devolved upon plaintiff to show that the unusual and

injurious delays were the result of the negligence of defendant or its connecting carrier and not such as were unavoidable in the exercise of due care by defendant in the operation of its trains.

While it may be granted that evidence of mere delay standing alone is not sufficient to support a reasonable inference of negligence, which is a positive wrong and always must be proven affirmatively, yet from the very nature of the relation of carrier and shipper circumstances that even slightly tend to show a negligent origin of the unusual delay will support an inference of negligence. "It is enough for plaintiff to disclose circumstances sufficient to raise a fair inference of negligence" and "especially is this so where the means of showing how the delay occurred is with the defendant and not the plaintiff." [Anderson v. Railroad, 93 Mo. App. 677; Witting v. Railroad, 101 Mo. 631; Otis Co. v. Railroad, 112 Mo. 622; Sloop v. Railroad, 93 Mo. App. 605; Botts v. Railroad, 106 Mo. App. 397; Fulbright v. Railroad, 118 Mo. App. 486; Ficklin v. Railroad,—Mo. App.—.] Thus, in the Anderson case in addition to unusual delays it was shown "that other trains going towards Chicago passed them while thus delayed:" and in the Fulbright case, supra, the delay was caused by the carrier holding the train carrying the plaintiff's stock at an intermediate station awaiting the arrival of a connecting train that was late. In both of these cases, we held the circumstances raised an inference of negligence sufficient to take the issue to the jury. In the present case, we have such circumstances together with others equally suggestive of negligence and we think they suffice to present an issue of fact. The principles followed in what has been said, when applied to the facts of the second shipment, necessitate a like conclusion. A recitation of those facts and the application of the rules announced to them would be in essential particulars repetitive and for that reason will not be made.

The seventh clause of the shipping contracts pro-. vides: "The party of the second part (shipper) in consideration of the rate named in this contract, further agrees to water and feed said stock at his or their own risk and expense while the same is in the cars of said first party or connecting lines and, in the event of any unusual delay or detention of said live stock while on said trip, from any cause whatever, the party of the second part agrees to accept as full compensation for all loss or damage sustained in consequence of such delay the amount actually expended by him or them in the purchase of food and water for the stock aforesaid." We cannot agree with defendant that this fixes the measure of plaintiff's damages resulting from negligence for which defendant is liable. The rule of law that prohibits the carrier from contracting against liability for the results of its negligence must be applied to prevent it accomplishing by indirection that which it cannot do by express agreement. The injury inflicted to the hogs in the second shipment affords a striking example illustrative of the soundness of the principle stated. The connecting carrier placed the cars containing these hogs on a sidetrack at Luther and kept them there for four or five hours on a very hot day sandwiched between two rows of box cars — a palpably negligent act. The animals became overheated and fourteen of them died there. Should we hold that plaintiff by the terms of the contracts is restricted in his recovery to the amount he expended for feed and water, we would deny him any recovery at all on account of these dead hogs and in effect would say that defendant could contract against liability for damages actually inflicted by negligence. Plaintiff is entitled to recover compensation for the actual damages sustained as the direct result of the negligence either of defendant or its connecting carrier within the sum for which the animals affected were valued in the contracts.

The tenth clause of the contracts contains the agree-

ment "that no claim for damages which may accrue to the party of the second part . . . shall be allowed or paid . . . or sued for in any court . . . unless a claim for such loss or damage shall be made in writing verified by the affidavit by the party of the second part or his agent and delivered to the general freight agent, etc. . . . within ten days from the time said stock is removed from said cars," etc. Plaintiff's agent, a commission firm at St. Louis, attended for him to the giving of the required notices. The first was mailed to defendant's general agent at St. Louis three days after the stock was unloaded and the second five days after the unloading of the second shipment. In both instances, itemized claims were presented in writing enclosed with letters, both containing full statements of all essential facts. The claims were formally defective in not being verified. They were received, however, long before the expiration of the respective times fixed for their presentation and the omissions could have been rectified within these periods, had defendant chosen to call the attention of the agents of plaintiff to them. Instead of doing this, defendant retained the claims without objection and, relative to the first, defendant after the lapse of some eight months wrote plaintiff's agents this letter: "On April 11, 1904, you presented our company with a claim for $131.72, account of J. P. Bushnell. Mr. M. L. Becker, after having throughly investigated the merits of this claim, begs to decline it as it now stands, but if you will render a bill for the feed charges he will issue a voucher. What is your pleasure?"

Five months after the second claim was presented. defendant wrote plaintiff's agents: "On June 10, 1904, you presented our company with a claim for $97.16, account J. B. Bushnell, Keytesville, Mo. After thoroughly investigating the merits of the claim, our Mr. M. L. Becker begs to decline, as there is no liability with this company. I will thank you, therefore, to withdraw."

These letters, though written long after the periods prescribed for the performance of the condition, clearly show that defendant accepted the claims received within those periods as full performances of the condition and proceeded to investigate them on their merits, thereby acting on the manifest intention to waive formal defects. Defendant has waived the objection to the sufficiency of the claims now pressed upon our attention. [Summers v. Railway, supra; Hamilton v. Railway, 80 Mo. App. 597; 101 Live Stock Co. v. Railway, 100 Mo. App. 674; McCullough v. Ins. Co., 113 Mo. 606; Andrus v. Ins. Co., 168 Mo. 151; Fowble v. Ins. Co., 106 Mo. App. 527; Fink v. Ins. Co., 60 Mo. App. 673; Ward v. Railway, 158 Mo. 226; Dezell v. Fidelity, etc. Co., 176 Mo. 253.] Under the facts disclosed, the question of waiver became one of fact and was properly submitted in the instructions given.

Other points made by defendant have been considered and found to be without sufficient merit to call for special mention. The case was fairly tried and the judgment is affirmed. All concur.