## PITTSBURGH, CINCINNATI, CHICAGO AND ST. LOUIS RAILROAD COMPANY v. HUGHES.

[No. 10,563.   Filed June 3, 1921.]

1. TRIAL.—*Agreed Statement of Facts.—Inferences.—Time Required to Transport Shipment.*—In an action against a railroad company to recover damages for delay in transporting a shipment of live stock, where it. appeared from the agreed statement of facts upon which the case was submitted that many similar shipments between the same points as involved in the action had been transported both before and after the shipment in suit in approximately nineteen hours, the court had the right to infer that that was the usual time required in transit.   p. 30.

2. TRIAL.—*Agreed Statement of Facts.—Inferences.—Unreasonable Delay in Transporting Shipment.*—In an action against a railroad company to recover damages for delay in transporting a shipment of live stock, where it appeared from the agreed statement of facts upon which the case was submitted that there were repeated delays en route, the court had a right to infer that such delays, in the absence of explanation, were unreasonable.   p. 31.

3. CARRIERS.—*Carriage of Freight.—Movement.—Regulation.—Statute.—Scope.*—Section 5205 Burns 1914, Acts 1907 p. 434, providing that carload freight shall be moved forward at not less than an average of fifty miles every twenty-four hours, etc., is not controlling on the question of reasonable time for transporting an interstate shipment of live stock, since §1 of the act expressly provides that the act shall not apply so as to regulate or control interstate commerce.   p. 31.

From White Circuit Court; *Addison K. Sills, Jr.,* Special Judge.

Action by Jacob W. Hughes against the Pittsburgh, Cincinnati, Chicago and St. Louis Railroad Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*G. E. Ross,* for appellant.
*Truman F. Palmer,* for appellee.

NICHOLS, P. J.—This cause was submitted to the trial court upon an agreed statement of facts which was substantially as follows:

On April 17, 1917, and for several years prior thereto, appellant was a common carrier for hire between Monticello, Indiana, and Chicago, Illinois, and operated a railroad from Monticello to Logansport, Indiana, and another line from Logansport to Chicago. Logansport was during all of said time a terminal of said railroad from Monticello to Logansport, and also a terminal for said line from Logansport to Chicago, and all freight destined over the line from Monticello to Chicago had to pass through said terminal at Logansport. On April 17, 1917, appellee as the owner tendered to the appellant for shipment from Monticello to the Union Stock Yards, Chicago, certain live stock, which appellant by its agreement in writing, accepted and undertook and agreed to transport from Monticello to the Union Stock Yards in Chicago, and there deliver the same for appellee to Spencer and Company, and which live stock was so accepted by appellant under said agreement, and not otherwise, at about 11 o'clock a.m. April 17, 1917, and left Monticello for Logansport at about 4:51 p.m. of said day, on the first train going in that direction, and which train reached Logansport at about 6:20 p.m. of said day and was thereupon transferred to a train which left Logansport at about 9:40 p.m. of said day, and which was the first train upon which live stock was carried over said line that left Logansport after the arrival of said stock at said terminal, and said train and live stock reached Union Stock Yards in Chicago at about 3:15 p.m. April 18, 1917; that said train so leaving Logansport upon which said

stock was being transported was delayed eighteen minutes at Boone, Cass county, Indiana, for water; at Denham, Pulaski county, Indiana, for three hours and seven minutes setting off cars with a hot-box, and by pulling out two draw-bars; at North Judson two hours and twenty-two minutes to let two sections of passenger train No. 207 and passenger train No. 831 pass; at Schererville, forty-two minutes for water and to change crews, caused by the sixteen hour law, and at Bernice for thirty minutes on account of another train ahead on the same track; that the distance from Monticello to Logansport is twenty-one miles, and from Logansport to Chicago, is one hundred seventeen miles; that many times prior to April 17, 1917, and likewise many times since that date live stock received by appellant at Monticello at about 11 o'clock a.m. to be transported over said lines of railroads from Monticello to the Union Stock Yards, Chicago, has been transported thereover, arriving at said destination before 6 o'clock a.m. of the next day or the following day after so received; and that said stock was received and transported under the "Uniform Limited Live Stock Contract of Affreightment," by which appellee in consideration of a reduced rate for said carriage agreed, "That in the event of any unusual delay or detention of said live stock, caused by the negligence of the said carrier, or its employes, or its connecting carriers or their employes, or otherwise, the said shipper agrees to accept as full compensation for all loss or damage sustained thereby the amount actually expended by said shipper, in the purchase of food and water for the said stock, while so detained"; that appellee on account of the delay in transporting said live stock was compelled to pay for extra feed, $8, a claim for which he filed with appellant between April 19, 1917, and April 23, 1917, and which sum appellant has refused to pay and the

same is unpaid; that at the time, appellee filed with appellant a claim in addition to said claim for extra feed as follows: For excessive shrinkage on twenty-three head of cattle, $106.83; for excessive shrinkage on two calves, $2.35; on account of decline in market price on twenty-three head of cattle, $59.67; and for decline in market price of two head of calves, $1.45, none of which has been paid and which appellant refuses to pay. At the time appellant received the live stock for shipment, its agent so receiving the same knew it was the desire and intent of appellee that the said shipment should be at said Union Stock Yards in time to be sold on the market of the morning of April 18, 1917; the car in which said live stock was loaded by appellee and transported by appellant was at Logansport attached to "a very heavily loaded" freight train and which was delayed as hereinbefore stated, and did not arrive at said Union Stock Yards, Chicago, until after the close of business on the market for April 18, 1917, so that appellee was compelled to wait until the market of the next day and to feed said cattle, which he would not have been required to do if appellant had delivered them at the time appellee desired and intended; said cattle shrank and lost in weight fifty pounds per head, in all 1,250 pounds, and appellee lost the value of such shrinkage, which was worth $9.29 per hundred pounds, in all, to wit: $116.15, and that if appellant had transported said stock so that the same could have been sold on the market of April 18, 1917, appellee would not have sustained said loss. It was further agreed that if any fact or facts therein stated was in conflict with said written agreement, said agreement should control.

The shipping contract which is made a part of the evidence, provides that no carrier is bound to transport said live stock by any particular train or in time for any particular market or otherwise than with rea-

sonable dispatch. There was no other evidence than this agreed statement of facts. Upon these facts the court found for appellee and against appellant in the sum of $178.30, for which amount judgment was rendered. Appellant then filed its motion for a new trial giving as reasons therefor that the finding was not supported by sufficient evidence, that it was contrary to law, and that the damages assessed were excessive. This motion was overruled, which ruling of the court constitutes the only error properly presented and relied upon for reversal.

It is contended by appellant that the burden rested upon appellee to show that appellant did unreasonably delay the transportation of the stock involved and that the injury resulted therefrom. Appellant's counsel argue that there is no evidence as to what time was reasonable for such transportation, and that the mere fact that it required twenty-eight hours to transport said stock 138 miles, and that stock before and after it had been shipped in less time, does not show schedule time, or what time was customary or reasonably necessary under the circumstances.

It is contended by appellee that the burden to show that the delay was not unreasonable was with the appellant. The case was submitted, however, to the court for trial on an agreement as to the facts involved, and by these facts it appears that many times prior to April 17, 1917, and many times thereafter, live stock received by appellant at Monticello at 11:00 a.m. was transported to the Union Stock Yards in Chicago by 6 o'clock a.m. of the next day which was in time for the market of that day, while upon the occasion here involved, the live stock did not reach its destination until 3:15 p.m., or nine hours and fifteen minutes after the time, which the court from the facts aforesaid, had a right to infer was the usual time re-

quired in transit.    It appears by the facts admitted that there were repeated delays between Logansport and Chicago, and the court had a right to infer that these delays unexplained were unreasonable. *Cincinnati, etc., R. Co.* v. *Case* (1890), 122 Ind. 310, 23 N. E. 797; *Terre Haute, etc., R. Co.* v. *Sherwood* (1892), 132 Ind. 130, 31 N. E. 781; *Angle* v. *Miss. & Mo. R. Co.* (1865), 18 Iowa 555; *Winne* v. *Illinois Central R. Co.* (1871), 31 Iowa 584; *McCoy* v. *K. & D. M. R. Co.* (1876), 44 Iowa 425; *Bushnell* v. *Wabash R. Co.* (1906), 118 Mo. App. 618, 94 S. W. 1001; *McFall* v. *Wabash R. Co.* (1906), 117 Mo. App. 477, 94 S. W. 570; *Thompson* v. *Quincy, etc., R. Co.* (1909), 136 Mo. App. 404, 117 S. W. 1193; *Nelson* v. *Chicago, etc., R. Co.* (1907), 78 Neb. 57, 110 N. W. 742.

Appellant cites §5205 Burns 1914, Acts 1907 p. 434, for the purpose of showing that the stock was transported within a reasonable time.    It is provided by this section that carload freight shall be moved forward at not less than an average of fifty miles every twenty-four hours, Sundays and holidays excepted, and that twenty-four hours shall be allowed for movement through terminals at point of origin, and for passing through any transfer or terminal en route. This section, however, is §3 of an act of the legislature of 1907, Acts 1907 p. 434, *supra,* §1 (§5203 Burns 1914) of which act expressly provides that the provisions of this act shall apply to corporations engaged in the business of common carrier of freight in carload lots or less, for hire, on railroads between points within this state, and that its provisions shall not apply so as to regulate or control interstate commerce.    As the shipment here involved was from Monticello, Indiana, to Chicago, Illinois, it was an interstate shipment and hence the section of the act cited is not controlling.

The trial court having found upon the agreed facts

that there was a right of recovery by appellee against appellant, such finding will not be disturbed by this court.

The next question we need to consider is as to whether the damages assessed are excessive. It will be observed that in the facts as agreed upon which the trial court has based its finding and judgment, it was stated that said stock was received and transported under the "Uniform Limited Live Stock Contract of Affreightment," by which appellee agreed that "in the event of any unusual delay or detention of said live stock caused by the negligence of said carrier or its employes, or its connecting carriers, or their employes, or otherwise, the said shipper agrees to accept as full compensation for all loss or damage sustained thereby, the amount actually expended by said shipper in the purchase of food and water for the said stock while so detained." The shipping contract is made a part of the agreed facts and instead of being headed the "Uniform Limited Live Stock Contract of Affreightment" is headed "Uniform Live Stock Contract,—Not Negotiable." In such shipping contract as set out in the brief, the words above quoted, as to the amount which appellee agrees to accept as full compensation, are not found. We have also examined the record and find that the copy of the shipping contract in the record is the same as in appellant's brief. It appears by the agreed facts that a claim was filed with appellant for extra feed, $8, and an additional claim was filed for excessive shrinkage on twenty-three head of cattle, $106.83; excessive shrinkage on two calves, $2.35; decline in market price on twenty-three head of cattle, $59.67; decline in market price on two head of calves, $1.45. These claims were not paid nor were they allowed by appellant. They seem, however, to have constituted the basis upon which the trial court rendered

its judgment for their total is $178.30, which is the amount of the judgment rendered; but the mere fact that claims were filed is not evidence that such claims were justly due. It appears by the admitted facts that appellee paid $8 for extra feed, and that he lost the value of the shrinkage which was $116.15. No other loss is stated in the admitted facts, and there is no evidence of any other loss. The total loss, therefore, is admitted as $124.15, and the judgment is excessive in the sum of $54.15.

If the appellee will therefore enter a remittitur upon the judgment record of the White Circuit Court, in the sum of $54.15, as of the date of the finding herein, and file a certificate of the clerk of said court showing such remittitur to have been entered within thirty days with the clerk of this court, said judgment will be affirmed; otherwise, the same will be reversed, all at the cost of appellee.

Certificate of remittitur filed.    Judgment affirmed.