31 P.(2d) 705

**PEDRICK v. SOUTHERN PACIFIC CO.**

**et al.**

No. 3929.

Supreme Court of New Mexico.

April 2, 1934.

Del W. Harrington and Norman C. Hall, both of El Paso, Tex., and W. C. Reid and E. C. Iden, both of Albuquerque, for appellants.

G. L. Reese, Sr., of Roswell, for appellee.

ZINN, Justice.

This is an action for damages. The case was tried to a jury, which awarded damages for negligence, and, from the judgment upon such award, the carriers appeal.

Appellee, the shipper, delivered to appellant Southern Pacific Company, as carrier, at a shipping point in Arizona, eight cars of cattle, about 343 head, for shipment to Willard, N. M., where the shipper was to receive them. The Southern Pacific transported them to its connecting carrier, the Atchison, Topeka & Santa Fé Railway Company.

As to the Southern Pacific, the allegations and proof are that during transportation it jerked and roughly handled the train in switching, backing, and going forward, so that one three year old steer and one cow were entirely lost, and left for dead at Deming, N. M., and the other cattle were likewise damaged as the result of the jerking and rough handling of the cars, and by the trampling of part of the cattle upon the others. The jury awarded the shipper $250 damages against the Southern Pacific. Though the Southern Pacific is here on appeal from the judgment, no error is predicated upon any motions, rulings, instructions, or judgment as to it, and such judgment will be affirmed without further comment.

As to the connecting carrier, the Santa Fé, the shipper alleged that it did not have ade-

quate pens, yards, and facilities for unloading cattle at Willard. The shipper notified the Santa Fé agent at San Marcial, N. M., that he wanted to unload the cattle at Belen and shipped to Willard on an early morning train. The shipper desired that the cattle reach Willard in the daytime. He unloaded the cattle at Belen, awaiting a train that would take them into Willard in the morning. A cantaloupe train, also known as a "Guaranty," "Penalty," or "P. G. X." train, left Belen about 6:40 a. m. the morning of July 6th, following the night on which the cattle were unloaded at Belen. The appellee insists that these cattle should have been taken on that train into Willard and not on a later train, which left Belen at 2 p. m. of the same day, causing the cattle to arrive at Willard between 6 and 7 o'clock in the evening. Upon arrival at Willard in the evening, the agents, servants, and employees of the Santa Fé unloaded only three cars, and left the remaining five cars loaded until the following morning. The appellee refused to accept the cattle until the following morning.

It was the appellee's theory that the failure to place the cattle at Belen on the train in the morning so that they could be unloaded in the daytime was the delay which caused the shrinking of the cattle.

The verdict of the jury as to the Santa Fé was in the sum of $150, and it is from a judgment upon this award that the Santa Fé appeals.

Though there are other allegations of negligence against the Santa Fé, the case was tried below, and will be disposed of here, on the theory that no damage can be awarded against the Santa Fé except those which may have been sustained because the cattle were left at Willard overnight in the cars, and then only if the proximate cause of such damage is the failure of the Santa Fé to move the cattle with reasonable dispatch in failing to carry them on its train leaving Belen in the early morning.

This theory is evident from the court's instructions to the jury, to which instructions the appellee did not object.

It is the theory of the Sante Fé that as a carrier it has the right to transport freight under schedules of its own making, so long as such freight is carried to its destination within a reasonable time.

■ The rule of law applicable in this instance is that a carrier of live stock is liable for all damage that is referable to the negligent prolongation of the transportation through its natural effect on the physical condition or latent vicious propensities of the animals, whereby they are reduced in strength or weight more than they would have been had prompt carriage and delivery been made. 4 R. C. L. 956.

■■ Just what is a reasonable time within which to make delivery where live stock is concerned cannot be defined by any general rule, but must depend upon the circumstances of each particular case. Certain it is, however, that it is not the duty of a carrier of live stock to carry the animals through at all hazards, in the shortest possible time, nor can it be said, as a matter of law, that a

shipment must be made on the first train which leaves after the property has been delivered for transportation. Id.

The bill of lading under which the cattle were shipped (uniform live stock contract) provided as follows: "The carrier does not undertake to transport said animals by any particular train, or within any particular time, or in time for any particular market."

The failure to ship on the particular "P. G. X." train was, as a matter of law, no violation of any obligation assumed by the appellant under the written contract. The contract does not require the carrier to deliver these cattle at Willard in the daytime. The requirement is that they should be shipped within a reasonable time.

What is a reasonable time depends upon the facts and circumstances of each individual shipment. 10 C. J. 286; 4 R. C. L. 738, § 207; Ritchie v. Oregon Short Line R. Co., 42 Idaho, 193, 244 P. 580, 45 A. L. R. 909, at pages 915 and 916. What is a reasonable time must of necessity, depend upon the nature of the thing to be done, and the circumstances surrounding the particular case. The Cincinnati, Indianapolis, St. Louis & Chicago Railway Co. v. Case, 122 Ind. 310, 23 N. E. 797.

The question as to what is a reasonable time for the transportation, and as to the reasonableness and sufficiency of the excuse which the carrier makes for delay, is for the jury. Bosley v. Baltimore & O. R. Co., 54 W. Va. 563, 46 S. E. 613, 66 L. R. A. 871.

In the instant case, broadly speaking, the sole question arising on the evidence as to the Santa Fé was whether it transported the cattle with reasonable dispatch. Under the court's charge, reasonable dispatch was to be considered present or absent, as the jury might consider it the duty or not the duty of the carrier to take the cattle out of Belen on its P. G. X. train departing at 6:40 a. m. the morning of July 6th. But carrier made no agreement to transport on a particular train nor within a particular time. On the contrary, by bill of lading provisions it expressly negatived its obligation to do either.

The P. G. X. train upon which appellee asserts the right to have had said cattle transported was shown to have been a fast train carrying highly perishable goods, in this case cantaloupes, and taking precedence over all other trains except passenger trains. If the carrier's duty to attach the eight cars of cattle to this fast-scheduled penalty train, under the facts here shown, were held issuable before the jury, then but slightly stronger facts will make issuable its duty to attach such shipments to passenger trains. Actually, the cattle went out of Belen at 2 p. m. the day following their unloading. This was less than twenty-four hours following unloading and more than twenty-four hours prior to the next scheduled train for handling local shipments of the kind this became from Belen to destination.

While not intending to lay down any hard and fast rule on the question of carrier's duty to transport with reasonable dispatch, each situation presenting a case unto itself, we are convinced, in view of the contract of carriage, that no such emergency was here shown

with respect to this shipment as to have imposed a duty on the carrier to attach the shipment to its penalty train. We think it error for the trial court to have submitted the question to the jury.

The judgment awarded the shipper as to the Santa Fé will be reversed.

In the instant case we deem it just to apportion the costs as follows: Five-eighths against appellant Southern Pacific and three-eighths against the appellee. It is so ordered.

WATSON, C. J., and SADLER, HUDSPETH, and BICKLEY, JJ., concur.